UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL,<br><br>               Plaintiff,<br><br><br>    vs.<br><br>KIM MALSAM-RYSDON, EX-SECRETARY OF HEALTH, IN HER INDIVIDUAL CAPACITY; JOAN ADAM, INTERIM SECRETARY OF HEALTH, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; STEVE BARNETT, SECRETARY OF STATE, IN HIS INDIVIDUAL CAPACITY; KRISTI NOEM, GOVERNOR FOR THE STATE OF SOUTH DAKOTA, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; TIM REISCH, INTERIM SECRETARY OF CORRECTIONS, IN HIS INDIVIDUAL CAPACITY; DOUG CLARK, ACTING WARDEN / INTERIM SECRETARY OF CORRECTIONS / DEPUTY SECRETARY, IN HIS INDIVIDUAL CAPACITY; DAVID SULLIVAN, WARDEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; TROY PONTO, DEPUTY WARDEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JOHN BENTING, ASSOC. WARDEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; J. COOK, ASSOC. WARDEN, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; C. ROTERT, EX-ASSOC. WARDEN / CCM, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; ALAN MADSEN, SECTION MANAGER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; SAM BADURE, SECTION MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; ELLIS, SECTION MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; T. SCHNEIDER, SECTION | 4:22-CV-04073-RAL<br><br><br>1915A SCREENING DISMISSING IN PART, DIRECTING SERVICE IN PART, AND RULING ON MISCELLANEOUS MOTIONS |

MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; K. OLSON, CASE MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; M. JONES, DISCIPLINARY HEARING OFFICER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; J. DREISKE, EX-DEPUTY WARDEN, IN HER INDIVIDUAL CAPACITY; D. YOUNG, EX-WARDEN, IN HIS INDIVIDUAL CAPACITY; L. LENTER, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; B. RAU, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; D. FRITZ, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; S. WOODWARD, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; S. LOCKWOOD, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; BROZIK, MD, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; W. MULLIN, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; M. KING, REGIONAL GTL MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; ANY AND ALL UNKNOWN GTL PERSONNEL, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES; M. MYERS, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN MEDICAL PERSONNEL, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES; CORRECTIONAL HEALTH SERVICES; M. CARPENTER, MEDICAL DIRECTOR, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; E. REGIER, MD, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN CORRECTIONAL HEALTH SERVICES NURSING STAFF, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES; AVERA MEDICAL GROUP; SURGICAL INSTITUTE OF SOUTH DAKOTA; SIOUX FALLS SPECIAL HOSPITAL; GTEL/GLOBAL TEL LINK

CORPORATION; CENTER FOR
DIAGNOSTIC IMAGING; DISTRICT OF
SOUTH DAKOTA – DEPARTMENT OF
JUSTICE; UNKNOWN DOJ SECTION
CHIEF(S) & ATTORNEY(S) & AGENTS, IN
THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES; KELLIE WASKO, IN HER
OFFICIAL CAPACITY, MONAE JOHNSON,
IN HER OFFICIAL CAPACITY,

              Defendants.

Plaintiff Randy Lee Rindahl, an inmate at the South Dakota State Penitentiary (SDSP), filed a pro se lawsuit under 42 U.S.C. § 1983 and several other federal statutes. Doc. 1. Rindahl is a barred filer under the Prison Litigation Reform Act (PLRA), but he paid the entire filing fee on July 15, 2022. Rindahl has also filed a motion for appointment of counsel, two motions for a temporary restraining order, and a motion titled "Motion to Correct Defect Within Conclusion/Remedies/Injunctions – Not Meant to be Amend/Supplement[.]"[1] Docs. 3, 5, 6, 7.

## I.  Prior Rule 11 Sanction

A different judge than the undersigned previously sanctioned Rindahl under Federal Rule of Civil Procedure 11 for committing fraud on the court. Rindahl v. Daugaard, 2011 WL 4549151, at *6 (D.S.D. Sept. 29, 2011). Rindahl is required to "attach a copy of the Report and Recommendation [describing his fraud on the court] and a copy of [the opinion adopting the Report and Recommendation] to any future complaint or initial filing in any state or federal court within the United States." Id. Although Rindahl has not attached a copy of the Report and Recommendation and the opinion adopting it to his complaint, he has provided notice of his Rule

---

[1] Rindahl's "Motion to Correct Defect Within Conclusion/Remedies/Injunctions – Not Meant to be Amend/Supplement" requests additional monetary damages not requested in his complaint. See Doc. 7. To the extent that Rindahl seeks to add this information to his complaint, this Court grants Rindahl's motion.

11 sanction, including the case number for the case in which he was sanctioned, and explained that he is unable to print a physical copy of the Report and Recommendation and the opinion required under his sanction while imprisoned.  Doc. 4.  Thus, this Court finds that Rindahl has substantially complied with his sanction and will now screen his complaint under 28 U.S.C. § 1915A.

## II.   Motion for Recusal

Rindahl has filed a motion for the recusal of the undersigned judge, citing 28 U.S.C. § 455 and 28 U.S.C. § 144.  Doc. 10.  In a prior case brought by Rindahl, this Court ruled on several motions pertaining to Rindahl's claims regarding billing for prison phone services.  Rindahl v. Noem, 2020 WL 6728840 (D.S.D. Nov. 16, 2020).  In his current motion for recusal, Rindahl notes a typographical error in this Court's ruling in that previous case in which the term "flat-rate calling[,]" a type of phone billing arrangement, is mistakenly referred to as "flat-rat calling[.]" Doc. 10 at 2-3 (citing Rindahl, 2020 WL 6728840, at *6 n.5).  Rindahl argues that this error demonstrates bias on the part of the undersigned judge.  Id.

Under 28 U.S.C. § 455, "[a] judge must recuse from 'any proceeding in which [the judge's] impartiality might reasonably be questioned.' " United States v. Melton, 738 F.3d 903, 905 (8th Cir. 2013) (alteration in original) (quoting 28 U.S.C. § 455(a)).  This standard is objective and questions "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Id. (quoting Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). The party who files the motion for recusal "carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (quoting Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992)).

The party seeking recusal must show "that the judge had a disposition so extreme as to display clear inability to render fair judgment." Melton, 738 F.3d at 905 (cleaned up). Rindahl bases his motion on allegations that this Court's prior ruling demonstrates bias against him. Doc. 10 at 2-3. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). A judicial ruling "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." Id. Here, Rindahl does not identify an extrajudicial source of evidence of bias and relies only on an unintentional typographical error.

"Section 144 provides for recusal of a district court judge where a legally sufficient affidavit is timely filed which demonstrates a personal bias or prejudice of the judge." United States v. Faul, 748 F.2d 1204, 1210 (8th Cir. 1984). Relief under § 144 "is expressly conditioned on the timely filing of a legally sufficient affidavit." Id. (citing United States v. Anderson, 433 F.2d 856, 859 (8th Cir. 1970)). The affidavit must allege bias or prejudice that "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Id. at 1211 (quoting United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)).

Rindahl has submitted an affidavit in which he argues that the typographical error in question is evidence of bias. Doc. 11. But as above, a typographical error in an opinion is not an extrajudicial source of evidence of bias, nor is an affidavit arguing that the typographical error shows bias. Thus, Rindahl's motion for recusal, Doc. 10, is denied.

## III.   1915A Screening

### A.   Factual Allegations of Rindahl's Complaint

5

Rindahl claims that various state and private actors have violated his rights in several ways. See Doc. 1 at 2-64. He claims that plea agreements in South Dakota, including his own plea agreement, are unconstitutional because South Dakota has passed a statute regarding capability to enter into a contract and, according to Rindahl, plea agreements must be governed by federal law rather than state law. Id. at 2.

Rindahl alleges that Global Tel Link (GTL),[2] a private business that provides telecommunications services for South Dakota Department of Corrections (SD DOC) prisons, has violated federal law by failing to disclose its rates and by engaging in flat rate billing. Id. at 3-6. He alleges that he communicated with Mike King, Regional Manager for GTL, regarding these issues. Id. at 4. Rindahl attaches billing records from GTL that he claims show a $0.11 flat rate applied to interstate long distance phone calls. Id. at 3-5. He also claims that the SD DOC receives a kickback of $0.03 per minute from every $0.08 per minute charged to inmates by GTL. Id. at 62-63. He alleges that this kickback is a violation of the Fifth Amendment Takings Clause and that GTL and the SD DOC are unjustly enriched by these rates. Id. Rindahl further claims that GTL is unjustly enriched by the media streaming services it provides to inmates. Id. He states that a monthly subscription to streaming media is $8.99 with an additional $11.00 service charge and that a three-hour subscription is $0.99 with an additional $3.00 service charge. Id. at 63. He argues that this violates the Sherman Act and that the SD DOC is violating the Takings Clause by receiving payment with no compensation to inmates. Id. at 64. He also argues that GTL offers a subscription gaming service and that this service offers cash prizes to be delivered to users. Doc.

---

[2] In a later supplement, Rindahl acknowledges that GTL has since changed its name to ViaPath Technologies. Doc. 9 at 1. Because Rindahl refers to this company as GTL in the majority of his pleadings, this Court will refer to this company as GTL in this order.

9 at 4-5. He asserts that he wrote to GTL in an attempt to collect these prizes, and he alleges that GTL has breached its contract by failing to provide prizes. Id. at 5-6.

Rindahl claims that SD DOC inmates are unconstitutionally restricted in their use of telephones and tablets. Id. at 1-2. He claims that inmates are not allowed to call certain phone numbers without authorization. Id. He alleges that he has been prevented from contacting the Mayo Clinic and other medical providers. See id. at 3.

Rindahl asserts that the SD DOC violated his right to access the courts by disposing of all "South Dakota Codified Law Publications" and all books containing the United States Code. Doc. 1 at 6-7. He alleges that inmates are instead provided with tablets that provide electronic access to Lexis through a contract with GTL. Id. He claims that he has been unable to defend against a motion to dismiss in a Wisconsin state court proceeding because he has not been provided access to any relevant legal materials and because his tablet was broken and not repaired or replaced. Id. at 7-9; Doc. 9 at 9-11. He asserts that he attempted to file a lawsuit in California and was unsuccessful because he could not access needed legal materials. Doc. 9 at 9-10. He also claims that he has been forced to choose between going to the law library at SDSP or attending noon meals. Doc. 1 at 8.

Rindahl seeks to make his specialty funds account at SDSP available for federal civil filing fees. Id. at 10. According to Rindahl, the SD DOC practice of sending a percentage of an inmate's monthly deposits to that inmate's savings account if the deposits exceed $160 is "a [p]unitive [s]anction/and or [p]unishment for bringing forth grievance within the Federal Civil Court[.]" Id. at 11. He also alleges that various SDSP officials have intentionally obstructed his ability to exhaust his remedies as required under the PLRA, thus denying him access to the courts. Id. at 10. As evidence of this obstruction, he cites a grievance reply from Jessica Cook in which she

informed him that he exceeded the ten-day window to submit a request. Id. Rindahl further alleges that his right to access the courts has been violated by SDSP's refusal to allow him to attend a Wisconsin probate hearing via Zoom. Id. at 12-13. He claims that the limitation that he may only have twenty phone numbers on his contact list has prevented him from acquiring medical records, contacting expert witnesses, and receiving legal advice for his legal proceedings. Doc. 9 at 12-13.

Rindahl initially sent a $400 check to this Court, rather than a $402 check, to pay his filing fee. See Doc. 8 at 1. This Court returned his $400 check and required that he make a complete payment. See id. Rindahl claims that SD DOC officials delayed depositing his returned $400 check into his account, making it more difficult for him to pay the $402 fee. Doc. 9 at 6-9. He alleges that this was done because the statute of limitations was close to expiring on his state-law medical malpractice claims. Id. at 7-9.

Rindahl alleges that various medical providers with Avera Medical Group and SD DOC officials have been deliberately indifferent to his serious medical needs and have fraudulently concealed his medical conditions. Doc. 1 at 13-32. He claims that x-rays of his left jaw after a 2014 assault by correctional personnel were falsified because the report mentions the "right mandible" rather than the left. See id. at 15. He alleges that this injury has caused headaches and numbness, but he has been assessed as not needing treatment despite suffering a fracture. Id. at 15-16. Rindahl further alleges that a CT scan of his brain reveals a "mild volume of patchy white hypodensity" that could be "changes of chronic small vessel ischemic disease" and that he is not receiving treatment for this condition. Id. at 19-20. Rindahl states that he passed out and struck his face on a bench and his head on the floor after being handcuffed to the bench for a nonviolent offense. Id. at 20, 46. He alleges that his untreated brain disease caused this injury and that it resulted in an inability to speak, immobility in his torso, issues with his right side, and a dislocated

right shoulder.  Id. at 20.  He claims that he suffers from thyroid gland nodules and had a blood test regarding these nodules but no further treatment.  Id.

Rindahl asserts that he suffers from a stomach wound that has scarred and that the wound has a pus or bowel-like discharge.  Id. at 21.  He was told that this condition required surgery, then later told that it would only need bandages, not surgery.  Id. at 21-22.  He alleges that, as of February 2022, he still has drainage issues with his stomach wound.  Id. at 22.

Rindahl claims that his left knee was injured by correctional personnel in 2013.  Id.  He alleges that he had further x-rays of the injury done on November 19, 2019, which showed trace joint fluid.  Id.  He alleges that Dr. Regier ordered a consultation with an orthopedic surgeon for possible corrective surgery but that SD DOC officials overrode this order. Id. at 23.  Rindahl claims that his knee braces have restricted his exercise and movements.  Id.  He also claims that later imaging showed mild patellofemoral osteoarthritis in both knees.  Id. at 23-24.

Rindahl alleges that he has fluid in his lungs and fractures to his upper left rib cage and his right lateral rib that occurred when he bent over to pick up a rag on or around December 10, 2019. Id. at 25.  He alleges that Dr. Fritz, a radiologist, reported "no acute findings" despite his injuries. Id. at 26.  He further alleges that imaging identified his lateral rib fracture on August 10, 2020, and that swelling in his liver was identified at this time as well.  Id.  Rindahl asserts that Dr. Fritz and Dr. Regier never offered pain management or compression bandages for his fracture and that much of the imaging done regarding this injury was falsified.  See id. at 26-30.

Rindahl asserts that he received a spinal cord injection from Dr. Scott Lockwood on July 25, 2011, and that the injection caused a loud snapping noise.  Id. at 31.  He alleges that he went limp and almost fell off the table.  Id.  He also alleges that Dr. Lockwood never told the SD DOC or Correctional Health Services that this occurred.  Id. at 32.  Rindahl claims that imaging

performed by Dr. Mullin, a radiologist, on February 6, 2012, showed damage to the C1 area of his spine and that he had disc degeneration in 2017. Id. He further claims that Dr. Mullin had a conflict of interest because Dr. Mullin is related to a correctional employee in the SD DOC. Id.

Rindahl claims that he was told by Case Manager Olson on July 7, 2020, that he was being transferred to the Mike Durfee State Prison (MDSP) for one year at the same time that he received correspondence from the South Dakota Attorney General regarding his previous prison litigation against SD DOC officials. Id. at 33. He alleges that he was transferred in an attempt to moot his pending request for injunctive relief in his previous case. Id. He alleges that he informed Olson that under federal law and SD DOC Policy, he was classified as having single cell status, and that inmates at MDSP are not single celled. Id. Rindahl claims that when he tried to assert his single cell status, he was placed in Disciplinary Housing for refusing housing. Id. at 34. He claims that he was found guilty of an L-44 charge for refusing housing after Section Manager Badure altered a public record and Lieutenant Jones made false statements. Id. at 34-38. As evidence of this, he alleges that Jones replaced the phrase "You are" with "You were" in a document. Id. at 38. He states that he received a punishment of six-months' loss of phone privileges, commissary, and visitation, which violated his rights. Id. at 34-35. He also states that he was told that the usual punishment for refusing housing is being sent to Segregated Housing, so his receiving a different punishment is disproportionate, discriminatory, and retaliatory. Id. at 35.

Rindahl alleges that SD DOC officials mishandled his grievances regarding his L-44 disciplinary charge and transfer in a deliberate attempt to prevent him from exhausting his administrative remedies. Id. at 36. He also alleges that several SD DOC officials, including

Badure, Jones, Troy Ponto, John Benting, Former SDSP Deputy Warden J. Dreiske,[3] Former SDSP Warden Darin Young,[4] Sam Yost, Cook, Olson, Section Manager Ellis, and former Interim Secretary of Corrections Tim Reisch,[5] were responsible for violating his rights by accusing him of a false disciplinary charge, punishing him disproportionately, and intentionally double celling him. Id. at 34, 36-41. Rindahl claims that being deprived of communication privileges, including access to phone and email, is a violation of his First Amendment rights. Id. at 43. He claims that SD DOC officials conspired to deprive him of his rights. Id.

Rindahl claims that his L-44 charge was expunged on August 17, 2022, by South Dakota Secretary of Corrections Kellie Wasko. Doc. 9 at 24. He alleges that Wasko's letter explaining the expungement stated that enhanced sanctions were applied to his disciplinary hearing disposition and that "[i]nmates shall not be disciplined unfairly and shall be afforded all applicable rights regarding due process." Id. He further alleges that while Wasko had identified SDSP Warden Dan Sullivan's[6] intentional procedural due process errors, she had failed to correct his

---

[3] Rindahl brings claims against J. Dreiske, the former Deputy Warden at SDSP, in her individual and official capacity. See Doc. 1 at 1; Doc. 6 at 1-2. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). But Rindahl does not identify Dreiske's successor, and his official capacity claims against other SDSP defendants remain in this lawsuit to provide injunctive relief. Thus, Rindahl's claims against Dreiske in her official capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).
[4] Rindahl brings claims against former SDSP Warden Darin Young in his individual and official capacity. See Doc. 1 at 1; Doc. 6 at 1-2. The current SDSP Warden is Dan Sullivan, who is automatically substituted for Young on Rindahl's official capacity claims. See Fed. R. Civ. P. 25(d).
[5] Rindahl brings claims against former Interim Secretary of Corrections Tim Reisch in his individual and official capacity. See Doc. 1 at 1; Doc. 6 at 1-2. The current Secretary of Corrections is Kellie Wasko, who is automatically substituted for Reisch on Rindahl's official capacity claims. See Fed. R. Civ. P. 25(d).
[6] Rindahl names "David Sullivan" as a defendant in this lawsuit. Doc. 1 at 1. The SDSP Warden's actual name is Dan Sullivan, and this Court will refer to him by his actual name.

unconstitutional acts such as restricting his privileges. Id. at 25. Although Rindahl acknowledges that SD DOC officials can restrict privileges such as phone usage under SDCL § 24-2-9(4) and SD DOC policies, he argues that this is unconstitutional. Id. at 26-27. He alleges that he informed Wasko and former SDSP Warden Doug Clark[7] that their failure to comply with state law could result in liability for Wasko, Clark, and other defendants. Id. at 28.

Rindahl asserts that Sullivan had the entire $250.10 in his spending account and $23 from his savings account moved into his frozen account without notice or due process. Id. at 49. He claims that he was not able to access his funds for commissary purchases or write checks out of his account to purchase bead orders. Id. He claims that Sullivan altered public records in order to accomplish this. Id. He also claims that Sullivan exceeded his authority by enacting additional sanctions to deter the use of illicit substances by inmates. Id. at 51-52.

Rindahl claims that he brought his concerns regarding his medical treatment and his allegations of falsified medical records to the attention of former South Dakota Secretary of Health Kim Malsam-Rysdon,[8] Interim South Dakota Secretary of Health Joan Adam, South Dakota Secretary of State Steve Barnett,[9] and South Dakota Governor Kristi Noem. Id. at 52-57. He alleges that because these officials were made aware of his injuries and allegations, they had a duty

---

[7] Rindahl brings claims against Doug Clark, the former Warden of SDSP, in his individual and official capacity. See Doc. 1 at 1; Doc. 6 at 1-2. The current Warden of SDSP is Dan Sullivan, who is automatically substituted for Clark on Rindahl's official capacity claims. See Fed. R. Civ. P. 25(d).

[8] Rindahl brings claims against Kim Malsam-Rysdon, the former South Dakota Secretary of Health, in her individual and official capacity. See Doc. 1 at 1; Doc. 6 at 1-2. The current Secretary of Health is Joan Adam, who is automatically substituted for Malsam-Rysdon on Rindahl's official capacity claims. See Fed. R. Civ. P. 25(d).

[9] Secretary of State Steve Barnett stepped down and was replaced by Monae Johnson, who is currently acting Secretary of State but will be sworn in as the newly elected Secretary of State in January of 2023. Under Fed. R. Civ. P. 25(d), Johnson is substituted for Barnett as a defendant on Rindahl's official capacity claims.

to enforce the SD DOC's contracts with Avera Medical Group to provide him with medical treatment.  See id. at 52-53.  Rindahl further alleges that these officials also had a duty under Article IV, § 3 of the South Dakota State Constitution to investigate and prosecute Avera Medical Group for health care fraud.  Id. at 55.

Rindahl alleges that he has petitioned Noem and Barnett to investigate the falsification of his criminal history by the Wisconsin DOC.  Id. at 57.  He alleges that an attorney within the Wisconsin DOJ named Larson, who is originally from Rapid City, SD, is part of a conspiracy involving several SD DOC personnel to identify him as an offender within the Wisconsin DOC system.  See id. at 57-59.  He further alleges that Article IV, § 3 of the South Dakota State Constitution requires that Noem and Barnett investigate these claims.  Id. at 58.

Rindahl asserts that Noem and Barnett have failed to enforce congressional mandates under the Prison Rape Elimination Act (PREA).  Id. at 59.  He claims that the South Dakota Special Investigation Unit falsified congressionally mandated audits required under the PREA and that he sent evidence of this to Noem and Barnett.  Id. at 60.  He claims that they have a duty to investigate this accusation under Article IV, § 3 of the South Dakota State Constitution and cites several state statutes.  Id. at 59-60.  Rindahl also claims that federal DOJ officials in South Dakota, along with Special Investigations Unit personnel, have used their positions to cover up the violations he alleges.  Id. at 60-62.  He states that they failed to interview him or the personnel he identified as violating his rights.  Id. at 61-62.  He also makes a vague reference to threats involving "over a dozen females under the names of Larsen/Larson & Anderson [who] had appeared on [SDSP] [g]rounds . . . wearing the uniform of a Captain" to impersonate public employees and trespass. Id. at 62.

Rindahl brings claims against all individual defendants in their individual and official capacities. See id. at 1-2, 88; Doc. 6 at 1-2.[10] He seeks several forms of injunctive relief and money damages from each defendant. See Doc. 1 at 64-91; Doc. 5 at 1; Doc. 6 at 1-2; Doc. 7 at 1-2.

**B.    Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. See Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does

---

[10] If a plaintiff does not specify the capacity in which he or she sues a defendant, the suit is treated as only including official capacity claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). In his complaint, Rindahl only alleges that Noem and Barnett "acted within their Official/Unofficial capacities" in failing to investigate PREA reports. See Doc. 1 at 88. But in his second motion for temporary restraining order and permanent injunction, he states that he seeks "the Issuing of Punitive Sanctions against each defendant within their unofficial Capacity[.]" This Court construes "unofficial capacity" to refer to individual capacity and construes Rindahl's claims to be against all defendants in their individual and official capacities.

not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)).   Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

### C.   Rindahl's Causes of Action

#### 1.   Claims Against GTL and Mike King

Rindahl brings claims against GTL and Mike King, GTL Regional Manager, under § 1983 for violations of the Fifth Amendment Takings Clause.  See Doc. 1 at 2-6, 89-91.  He also brings claims against GTL under several other federal statutes and regulations.  See id. at 3-6.  He brings a state-law breach of contract claim regarding offers allegedly made by a game provided by GTL's streaming media service.  See Doc. 9 at 4-6.  He also brings state-law claims for unjust enrichment regarding GTL's phone call rates and streaming media service.  Doc. 1 at 62-64.

##### a.   42 U.S.C. § 1983 Claims

15

"Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law." Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999); see also Dennis v. Sparks, 449 U.S. 24, 27 (1980) (stating that a private actor is considered a state actor if the private actor is a "willful participant in joint action with the State or its agents"). A person may fairly be said to be a state actor if they " 'acted together with or . . . obtained significant aid from state officials' in furtherance of the challenged action." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).

To establish liability under § 1983, a plaintiff "must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States." Outboard Marine Corp., 172 F.3d at 536; see West v. Atkins, 487 U.S. 42, 49 (1988). State action exists "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Pariser v. Christian Health Care Sys., Inc., 816 F.2d 1248, 1252 (8th Cir. 1987) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Parker v. Boyer, 93 F.3d 445, 447–48 (8th Cir. 1996) (cleaned up) (quoting West, 487 U.S. at 49). A private actor will not be deemed as acting under the color of state law merely because it performs a public contract. Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

16

Rindahl has brought previous lawsuits in this and other Courts against GTL in which he made similar allegations. See, e.g., Rindahl, 2020 WL 6728840, at *3-6 (D.S.D. Nov. 16, 2020); Rindahl v. Oliver, 2020 WL 5901693, at *1-2 (E.D. Va. Mar. 20, 2020). In Rindahl v. Noem, this Court joined several other federal district courts in finding that "GTL and its employees are not state actors for purposes of § 1983." 2020 WL 6728840, at *5-6; see also Shaw v. Kaemingk, 2018 WL 3682503, at *3 (D.S.D. Aug. 2, 2018) (finding that GTL is not a state actor). Although Rindahl alleges that GTL has violated his rights, he has not plead facts sufficient to deem GTL a state actor. See Doc. 1 at 2-6, 62-64, 89-91. Because GTL is not a state actor, Rindahl's § 1983 claims against GTL and King are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### b.    Sherman Act Claim

Rindahl alleges that GTL and the SD DOC have engaged in "a well-established program of deprivations identified under the Sherman Act" through GTL's streaming media service. Id. at 64. Section 1 of the Sherman Act makes it illegal for a "contract, combination . . . , or conspiracy" to restrain trade or commerce. 15 U.S.C. § 1. Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations[.] 15 U.S.C. § 2. "The specific intent required [for a violation of § 2] is 'an intent to control prices or to restrict competition unreasonably.' " SuperTurf, Inc. v. Monsanto Co., 660 F.2d 1275, 1283 (8th Cir. 1981) (quoting United States v. Empire Gas Corp., 537 F.2d 296, 298-99 (8th Cir. 1976)). "Similarly, a 'conspiracy to monopolize' claim requires a showing of defendant's specific intent to monopolize." Id. Here, although Rindahl alleges that GTL and the SD DOC have violated the Sherman Act, he alleges no facts regarding an intent to control prices,

17

restrict competition unreasonably, or monopolize trade.  See Doc. 1 at 64.  Thus, Rindahl's Sherman Act claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### c.      Claims Under Other Federal Statutes

Rindahl references 47 U.S.C. §§ 201, 203 and 47 CFR §§ 64.2401, 64.6110, statutes and regulations requiring telecommunications providers to provide notice to customers of pricing and charges.  Id. at 65.  He also cites 47 CFR § 64.6090, a regulation prohibiting the practice of flat-rate billing.  Id.  Construing his complaint liberally, Rindahl brings claims against GTL for changing prison telephone pricing rates without providing proper notice and for engaging in flat-rate billing.  See id.

The Federal Communications Act provides a private cause of action against telecommunications providers for violations of 47 U.S.C. §§ 201, 203.  See 47 U.S.C. §§ 206-207. Further, this Court has held that a "[f]ailure to comply with [47 C.F.R. § 64.2401(b)] constitutes an unjust and unreasonable practice in violation of § 201[.]"  All. Commc'ns Co-op., Inc. v. Glob. Crossing Telecomms., Inc., 663 F. Supp. 2d 807, 835 (D.S.D. 2009).  "[T]o violate a regulation that lawfully implements § 201(b)'s requirements is to violate the statute."  Id. (alteration in original) (quoting Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 54 (2007)).  47 C.F.R § 64.6110 provides rate disclosure requirements for telecommunications providers that provide services to inmates.  This Court has allowed claims under § 64.6110 to go forward at the screening stage.  See Rindahl v. Noem, 2020 WL 3036518, at *3 (D.S.D. June 5, 2020).

Here, Rindahl alleges facts sufficient to bring claims for violation of 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110.  Rindahl provides billing statements from February 2, 2021,

to March 1, 2021, and from September 1, 2021, to September 9, 2021, in support of his claims. Doc. 1 at 3, 5. He alleges that these billing statements and a conversation he had with King, the regional manager for GTL, have revealed "an undisclosed rate change from February thru March 2021[.]" See id. at 4-5. He alleges that the rate has changed from "$0.11 a minute . . . to a Flat-Rate of $0.08 a minute[.]" Id. at 5. He further alleges that the rates "extend outside the published rates as identified by SD DOC[.]" Id. at 4. On February 21, 2021, Rindahl was billed $2.36, or approximately $0.1144 per minute, for a phone call to his sister lasting 20 minutes and 38 seconds. See id. at 3. On September 1, 2021, Rindahl was billed $1.77, or approximately $0.0849 per minute, for a phone call to the same number lasting 20 minutes and 51 seconds. See id. at 5. Rindahl alleges that he was not provided notice of any changes to his telephone rates. See id. at 3-6. Now such a rate change seems favorable to an inmate like Rindahl such that it is hard to conceive of any damage to him from such a rate reduction. Nevertheless, Rindahl's claims for insufficient notice of telephone rates under 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110 against GTL survive § 1915A screening.

Rindahl alleges that GTL has engaged in flat-rate billing in violation of 47 C.F.R. § 64.6090. Id. at 3-5. Flat-rate billing is defined as "a calling plan under which a Provider charges a single fee for an Inmate Calling Services call, regardless of the duration of the call[.]" 47 C.F.R. § 64.6000(h). Rindahl cites two short phone calls in February 2021 for which he was charged eleven cents each and two short phone calls in September 2021 for which he was charged eight cents each as evidence that he has been billed a flat rate of eleven cents and eight cents per call, respectively.[11] See id. at 3-5. These charges likely represent a minimum charge for short phone

---

[11] The two calls in February 2021 were thirty seconds and fifty-four seconds in duration. Doc. 1 at 3. The two calls in September 2021 were thirty seconds and seven seconds in duration. Id. at 5.

calls, but this Court cannot say with certainty that this is the case nor is this Court inclined to rule on whether charging inmates a minimum amount for short phone calls is a form of flat-rate billing. Thus, Rindahl's 47 C.F.R. § 64.6090 flat-rate billing claim against GTL survives § 1915A screening.

Rindahl only alleges that King attempted to explain GTL's rates to him and makes no other claims regarding King's involvement in this matter. See Doc. 1 at 4. Thus, to the extent that Rindahl brings claims against King under 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110, 64.6090, these claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### d.     State-Law Breach of Contract Claim

Rindahl alleges that GTL breached the contract involving a video game on its streaming media service when it failed to provide him with a cash prize allegedly offered by the game. Doc. 9 at 4-6. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action [over which this Court has original jurisdiction] that they form part of the same case or controversy[.]" Rindahl's state-law breach of contract claim against GTL is part of the same "case or controversy" as his claims against GTL under 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110, 64.6090. Thus, this Court appears to have supplemental jurisdiction over his state-law breach of contract claim against GTL.

Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." Bowes Constr., Inc. v. S.D. Dep't of Transp., 793 N.W.2d 36, 43 (S.D. 2010) (citation omitted). A contract requires "(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or

consideration." SDCL § 53-1-2.[12]  This court cannot say whether Rindahl's participation in the video gaming service expecting possible cash prizes was consideration given for entry into a contract with GTL such that GTL made an enforceable promise to pay Rindahl.  See Doc. 9 at 4-6.  Thus, Rindahl's state-law breach of contract claim against GTL survives § 1915A screening. Because Rindahl only alleges that King attempted to explain GTL's rates to him, Rindahl's state-law breach of contact claim against King is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

       **e.**       **State-Law Unjust Enrichment Claims**

Rindahl alleges that GTL has been unjustly enriched by its phone call rates and by its streaming media service charges.  Doc. 1 at 63.  Again, 28 U.S.C. § 1367(a) grants this Court supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the action over which this Court has original jurisdiction.  Here, Rindahl's state-law unjust enrichment claims against GTL are part of the same "case or controversy" as his claims against GTL under 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110, 64.6090.  Thus, this Court appears to have supplemental jurisdiction over his state-law unjust enrichment claims against GTL.

Under South Dakota law, "[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.' "  Hofeldt v. Mehling, 658 N.W.2d 783, 788 (S.D. 2003) (quoting Parker v. W.

---

[12] The Court notes that "minors, persons of unsound mind, and persons deprived of civil rights" are not capable of contracting under SDCL § 53-2-1.  But this Court is only aware of cases in which this statute has been applied to persons of diminished capacity.  See, e.g., In re Estate of Perry, 582 N.W.2d 29, 33 (S.D. 1998).  The Supreme Court of South Dakota did not issue an opinion when it rejected a criminal defendant's argument that he did not have the capacity to enter into a plea agreement because he was a prisoner at the time that he pleaded guilty to a subsequent crime.  See South Dakota v. Fonseca, 740 N.W.2d 887 (Table) (S.D. 2007).  This Court will assume that Rindahl was capable of contracting for purposes of screening.

Dakota Insurors, Inc., 605 N.W.2d 181, 187 (S.D. 2000)).  A plaintiff must show that the defendant received a benefit, that the defendant was aware of this benefit, and "that it is inequitable to allow [the defendant] to retain this benefit without paying for it."  Id. (citing Action Mech., Inc. v. Deadwood Historic Pres. Comm'n, 652 N.W.2d 742, 750 (S.D. 2002).  "Restitution [for unjust enrichment] is not available when the rights and obligations at issue have been defined by contract."  Dowling Fam. P'ships v. Midland Farms, 865 N.W.2d 854, 862 (S.D. 2015).  Thus, unjust enrichment is not available when "the plaintiff's 'remedy l[ies] in a claim for breach of contract[.]' "  Id. (quoting Johnson v. Larson, 779 N.W.2d 412, 416 (S.D. 2010)).

Here, Rindahl alleges that GTL has been unjustly enriched by the collection of unreasonable fees and by violating the Takings Clause.  Doc. 1 at 62-63.  He alleges that he has paid fees, a benefit to GTL, and that GTL is aware of the benefit.  See id. at 62-64.  But he does not allege that GTL has not provided consideration for this benefit because he acknowledges that he received phone services in exchange for his payments.  See id.  Instead, he only claims that the fees are unreasonably high for the services that he has received.  See id.  Because Rindahl's remedy, if any, against GTL lies in a claim for breach of contract or violation of the Federal Communications Act, his state-law unjust enrichment claim against GTL and King for phone call rates is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

Rindahl also alleges that GTL has been unjustly enriched by its streaming media service charges.  Id. at 63-64.  He argues that the subscription rate of $8.99 a month plus a $11.00 a month service charge and the rate of $0.99 for three hours plus a $3.00 service charge are unjust and unreasonable.  Id.  He also alleges that he has received no "compensation" for these unreasonable charges.  Id. at 64.  Despite this conclusory allegation, Rindahl does not claim that he paid this fee and did not receive the streaming media service.  See id. at 63-64.  Further, even if this were true,

his remedy would be a state-law breach of contract claim under <u>Midland Farms</u>.  <u>See</u> 865 N.W.2d at 862.  Rindahl cites to <u>Lalic v. CG RYC, LLC</u>, a Southern District of Florida case that he believes stands for the proposition that "the cost of a Subscription cannot extend outside the Subscription itself[,]" thus rendering service charges unjust.  Doc. 1 at 90-91 (citing <u>Lalic v. CG RYC, LLC</u>, 2018 U.S. Dist. LEXIS 137279 (S.D. Fla. Aug. 13, 2018)).  But <u>Lalic</u> examined the minimum wage implications of whether mandatory service charges added to a restaurant customer's bill were tips or commissions and does not apply here.  <u>See</u> 2018 U.S. Dist. LEXIS 137279, at *14-16.  Rindahl's state-law unjust enrichment claim against GTL and King for streaming media services is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2.    Official Capacity Claims for Money Damages

#### a.    South Dakota State Employees

Rindahl brings claims against Adam, Noem, Sullivan, Ponto, Benting, Cook, Rotert, Madsen, Badure, Ellis, Schneider, Olson, Jones, Dr. Carpenter, Dr. Regier, unknown Correctional Health Services Nursing Staff,[13] Wasko, and Johnson in their official capacities for money damages.  <u>See</u> Doc. 1 at 1; Doc. 6 at 1-2; Doc. 7 at 1-2.  These defendants were employees of the South Dakota Department of Corrections at the time of the incidents in question.  <u>See</u> Doc. 1 at 1.  As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citing <u>Brandon v. Holt</u>, 469 U.S. 464,

---

[13] Rindahl names "All Registered Nurse(s) from 2011 to date (SDSP)" in the caption of his complaint.  Doc. 1 at 1.  He makes several allegations that nurses were deliberately indifferent to his serious medical needs.  <u>See, e.g.</u>, <u>id.</u> at 20.  Rindahl's subsequent filing in which he states the amount in damages he seeks from each defendant refers to Correctional Health Services "Nursing Staff[.]"  Doc. 7 at 2.  This Court will refer to the several nurses against whom Rindahl brings claims as "unknown Correctional Health Services Nursing Staff[.]"

471 (1985)). Thus, it is a suit against the state itself. Id. While "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009) (citing County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Here, Rindahl seeks both money damages and injunctive relief. See Doc. 1 at 64-91; Doc. 6 at 1-2; Doc. 7 at 1-2. The State of South Dakota has not waived its sovereign immunity. Thus, Rindahl's claims against Adam, Noem, Sullivan, Ponto, Benting, Cook, Rotert, Madsen, Badure, Ellis, Schneider, Olson, Jones, Dr. Carpenter, Dr. Regier, unknown Correctional Health Services Nursing Staff, Wasko, and Johnson in their official capacities for money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

**b.    Third-Party Medical Defendants**

Rindahl brings claims against Avera Medical Group, Dr. Fritz, Dr. Lenter, Dr. Rau, Dr. Woodward, Dr. Lockwood, unknown Medical Personnel,[14] Avera Medical Group personnel, Center for Diagnostic Imaging, unknown Center for Diagnostic Imaging personnel, Sioux Falls Specialty Hospital, Dr. Mullin, unknown Sioux Falls Specialty Hospital personnel, Dr. Brozik[15],

---

[14] Rindahl names "Unknown Medical Personnel" in the caption of his complaint. Doc. 1 at 1. He separately names "Unknown Personnel" from Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, and Surgical Institute of South Dakota in his motion to correct. Doc. 7 at 1-2. This order will refer to all unknown medical personnel from third-party medical providers as "unknown Medical Personnel."

[15] Rindahl refers to "Broski" in the caption of his complaint and "Brozik" in his factual allegations. Doc. 1 at 1, 21, 72. This order will refer to the defendant as Dr. Brozik.

and unknown Surgical Institute for SD personnel in their official capacities for money damages. See Doc. 1 at 1; Doc. 6 at 1-2; Doc. 7 at 1-2.  Rindahl alleges that these defendants were South Dakota medical providers that contracted with the SD DOC to provide him with medical care at the time of the incidents in question.[16] See Doc. 1 at 1, 13-32.  Thus, Rindahl brings these claims against the State of South Dakota, as these defendants contracted with the SD DOC, a state entity, to provide medical care.  See Will, 491 U.S. at 71 (citing Brandon, 469 U.S. at 471).

Again, the Eleventh Amendment acts as a bar to suits against the state for money damages unless the state has waived its sovereign immunity.  Id. at 66.  Here, Rindahl seeks both money damages and injunctive relief.  See Doc. 1 at 64-91; Doc. 6 at 1-2; Doc. 7 at 1-2.  The State of South Dakota has not waived its sovereign immunity.  Thus, Rindahl's claims against Avera Medical Group, Dr. Fritz, Dr. Lenter, Dr. Rau, Dr. Woodward, Dr. Lockwood, unknown Avera Medical Group personnel, Center for Diagnostic Imaging, unknown Center for Diagnostic Imaging personnel, Sioux Falls Specialty Hospital, Dr. Mullin, unknown Sioux Falls Specialty Hospital personnel, Dr. Brozik, and unknown Surgical Institute for SD personnel in their official capacities for money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### c.      Federal Employees

Rindahl brings claims against unknown Section Chief(s) and Attorney(s) in their official capacities for money damages.  See Doc. 1 at 2; Doc. 6 at 1-2; Doc. 7 at 2.  He also appears to

---

[16] Although a private actor does not act under color of state law merely because it performs a public contract, Rendell-Baker, 457 U.S. at 841, the Supreme Court has noted that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." West, 487 U.S. at 56.  Thus, the Court will treat these defendants as acting under color of state law for screening purposes but makes no finding of fact on that point.

name the United States as a defendant.[17]  See Doc. 7 at 2.  Construing his complaint liberally,

Rindahl brings these claims under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388

(1971), because these defendants are either federal employees or the United States.[18]

"A Bivens claim is a cause of action brought directly under the United States Constitution

against a federal official acting *in his or her individual capacity* for violations of constitutionally

protected rights." Buford v. Runyon, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added)

(citing Bivens, 403 U.S. 388); see also Little v. South Dakota, 2014 WL 6453844, at *3 (D.S.D.

Nov. 17, 2014) ("A Bivens action may not be asserted against the United States, its agencies, or

against federal employees in their *official* capacity." (internal quotation omitted)).  "[A] *Bivens*

action cannot be prosecuted against the United States and its agencies because of sovereign

immunity." Buford, 160 F.3d at 1203; see also Laswell v. Brown, 683 F.2d 261, 268 (8th Cir.

1982) ("Bivens and its progeny do not waive sovereign immunity for actions against the United

States . . . .").  Thus, Rindahl's claims against unknown Section Chief(s) and Attorney(s) in their

official capacities for money damages and against the United States are dismissed without

prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

> **3.  Individual Capacity Claims and Official Capacity Claims for Injunctive Relief**

---

[17]  Rindahl names "District of South Dakota – Department of Justice" as a defendant in his complaint, along with "Unknown Section Chief(s) & Attorney(s)" of the DOJ.  See Doc. 1 at 2. In his motion to correct, he names "United States" as a defendant.  Doc. 7 at 2.

[18]  § 1983 claims can only be brought against those who act "under color of state law[.]"  See 42 U.S.C. § 1983.  To the extent that Rindahl brings § 1983 claims against unknown Section Chief(s) and Attorney(s) and against the United States, those claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).  Rindahl's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.  See id.

### a.      Plea Agreement Claim

Rindahl alleges that plea agreements in South Dakota, including his own plea agreement, are unconstitutional because they are formed under South Dakota law and not federal law. Doc. 1 at 2.  He asks this Court to order South Dakota circuit courts to discontinue the acceptance of admissions of guilt entered under plea agreements. Id. at 64.  He also asks this Court to vacate all existing convictions based on plea agreements and to order new plea agreements in a manner Rindahl believes to not violate the Constitution.  Id.

In Heck v. Humphrey, the Supreme Court explained that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."  512 U.S. 477, 481 (1994) (citing Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973)).  Further, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

invalid," a plaintiff must show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Id. at 486-87.

Here, by alleging that his constitutional rights have been violated by his South Dakota state plea agreement, Rindahl "challenges the fact or duration of his confinement[.]" See id. at 481 (citing Preiser, 411 U.S. at 488-90). Rindahl seeks to overturn his existing conviction under his old plea agreement, even though his pleading suggests a willingness to enter into a different plea agreement. See Doc. 1 at 64. Thus, his exclusive remedy to seek to set aside his plea and conviction is through a habeas petition. See Heck, 512 U.S. at 481 (citing Preiser, 411 U.S. at 488-490). Rindahl has not shown that his conviction or sentence has been reversed, expunged, declared invalid, or called into question as required by Heck. Id. at 486-87. Rindahl's plea agreement claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). If Rindahl is not time-barred to do so, he can file a separate petition under 28 U.S.C. § 2254.

**b.    Telephone Policies Claim**

Rindahl alleges that SD DOC policies restrict his ability to make phone calls. Doc 9 at 1-4. Specifically, he claims that inmates are not allowed to call certain numbers without authorization and that inmates must designate a contact list. Id. at 1-3. He further claims that this has prevented him from accessing medical care and from pursuing legal claims. Id. at 3-4. Construing his complaint liberally, Rindahl brings a claim for violation of his First Amendment free speech rights. See id. at 1-4. This Court also construes Rindahl's complaint as seeking an injunction enjoining the SD DOC from enforcing the allegedly unconstitutional policies. See id.

Rindahl alleges that these policies restrict his rights, but he does not identify any individual defendants who directly participated in the alleged constitutional violation or caused it to occur through a failure to train or supervise as required under Parrish. See 594 F.3d at 1001; Doc. 9 at 1-4. Thus, he fails to state a claim for violation of his First Amendment rights against individual defendants in their individual capacities. Rindahl's telephone policies claim against individual defendants in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

"The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment[.]" Jones v. N.C. Prisoners' Lab. Union, Inc., 433 U.S. 119, 125 (1997). "While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." Kaden v. Slykhuis, 651 F.3d 966, 968 (8th Cir. 2011) (per curiam) (citation omitted). In Turner v. Safley, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The Turner Court provided four factors to determine whether the prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994). The United States Court of Appeals for the Eighth Circuit has noted that while inmates may have a right to use the telephone in some instances, "it is a perilous over-generalization" to declare that inmates have a First Amendment right to telephone access. See Holloway v. Magness, 666 F.3d 1076, 1079 (8th Cir. 2012).

Here, Rindahl alleges that his First Amendment rights have been and continue to be violated by SD DOC policies. See Doc. 9 at 1-4. The analysis of this claim under Turner requires defendants to put forth a legitimate government interest furthered by these policies. Thongvanh, 17 F.3d at 259. Thus, at this early phase of litigation, the Court cannot say Rindahl's telephone policy claim is wholly without merit. This Court construes Rindahl's official capacity claim for injunctive relief as being brought against Sullivan and Wasko. Rindahl's First Amendment free speech claim regarding SD DOC telephone policies against Sullivan and Wasko in their official capacities for injunctive relief survives § 1915A screening.

c.    **Access to the Courts Claims**

Rindahl alleges that the legal materials at SD DOC facilities are insufficient, causing him to be unable to litigate legal matters in Wisconsin and California. See Doc. 1 at 6-13; Doc. 9 at 6-13. Specifically, he alleges that the SD DOC threw out physical copies of the United States Code in order to intentionally deprive him and other inmates of access to legal materials. Id. at 66. He claims that Lexis is "State owed [sic] Software" and that inmates have no access to third-party software. Id. Rindahl asks this Court to order the SD DOC to change its software platform to allow digital legal correspondence, save inmates money spent on legal mail, and to allow inmates access to more of their funds to spend on filing fees. See id. at 10-11, 66. He asks this Court to require the State to employ law students to help inmates with legal filings and to order public defenders to assist with habeas petitions. Id. at 66. He further asks this Court to require the State to consider implementing a program that would use a search engine such as Google or Bing to help with research and reentry to society. Id.

Rindahl alleges that his First Amendment right to access the courts is violated by the SD DOC, but he does not identify any individual defendants who directly participated in the alleged

constitutional violation or caused it to occur through a failure to train or supervise as required under Parrish. See 594 F.3d at 1001; Doc. 1 at 6-13; Doc. 9 at 6-13. Rindahl's First Amendment access to the courts claims against individual defendants in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

"The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Casey, 518 U.S. at 353).

Here, Rindahl alleges an actual injury as required by Casey. He claims that a complaint he filed in Wisconsin was "returned" because he "failed to comply with Wisconsin local Court rules" which he could not access. Doc. 9 at 11. He also states that he was unable to defend against a motion to dismiss in a Wisconsin civil case, causing that motion to be granted and his $120,000 claim to be dismissed, although whether this is the same case as his "returned" complaint is unclear. See Doc. 1 at 7. Further, he claims that he was unable to file a lawsuit in California because he was unable to comply with the local rules. Id. at 10-11. Thus, he alleges that nonfrivolous legal claims have been impeded. See Johnson, 142 F.3d at 1089 (citing Casey, 518 U.S. at 353). The Court construes Rindahl's access to the courts claims as being brought against Sullivan and Wasko. Rindahl's First Amendment access to the courts claims regarding his Wisconsin and California lawsuits against Sullivan and Wasko in their official capacities for injunctive relief survive § 1915A screening.

Rindahl also alleges that SD DOC officials have impeded him from bringing claims in this present lawsuit by delaying his access to his returned $400 check. Doc. 9 at 6-9. He further alleges that SD DOC officials have refused to process or delayed the processing of his grievances in order to prevent him from exhausting his administrative remedies. See, e.g., Doc. 1 at 39. Rindahl does not allege that these actions have prevented him from bringing claims, and he has successfully brought these claims in the present lawsuit. See Doc. 9 at 6-9; see, e.g., Doc. 1 at 39. Thus, his First Amendment access to the court claim for his filing fee difficulties in the present lawsuit and for grievance process issues are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### d.    Medical Claims

### (1)    Claims Against Correctional Health Services

Rindahl brings claims against Correctional Health Services. Doc. 1 at 1; Doc. 7 at 2. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citation omitted).

Correctional Health Services is a division of the Department of Health. See Correctional Health Care, S.D. Dep't of Health, https://doh.sd.gov/corrections (last visited July 6, 2022). According to South Dakota statute, the Department of Health was created by the state legislature. See SDCL § 34-1-1.1. Correctional Health Services is an arm of the State of South Dakota and,

as such, is not subject to suit under § 1983. Rindahl's claims against Correctional Health Services are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (2)   Remaining Claims

Rindahl alleges that various medical providers have committed health care fraud, medical malpractice, and deliberate indifference to his serious medical needs by fraudulently concealing his health conditions. See Doc. 1 at 13–32. He also claims that several SD DOC officials have been deliberately indifferent to his serious medical needs. See id. This Court also construes Rindahl's complaint as seeking the medical care that he alleges he has been denied. See Doc. 1 at 67–75.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estate of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778,

784 (8th Cir. 1997)).  The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  Id. (citing Coleman, 114 F.3d at 784).  "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' "  Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)).  To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Rindahl alleges that he has suffered from fractures and other serious injuries.  E.g., Doc. 1 at 67-68.  His allegations describe serious medical needs.  See Coleman, 114 F.3d at 784 (citing Camberos, 73 F.3d at 176).  He further alleges that various defendants have falsified imaging, denied him surgery, and otherwise refused to treat these injuries.  E.g., Doc. 1 at 67-68. Thus, he alleges that defendants were aware of and deliberately disregarded his serious medical needs.  See Dulany, 132 F.3d at 1239 (citing Coleman, 114 F.3d at 784).  Rindahl claims that Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, Surgical Institute of South Dakota, Dr. Myers,[19] Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr. Woodward, Dr. Lockwood, Dr. Mullin, unknown Medical Personnel, Dr. Regier, Young, Ponto, Dreiske, Dr. Carpenter, Benting, Cook, Madsen, Clark, and Sullivan directly participated in the alleged constitutional violations.  See Doc. 1 at 13-

---

[19] Rindahl refers to "Myer" in the caption of his complaint and "Myers" in his factual allegations. Doc. 1 at 1, 15, 67.  His name on an attached medical record is Mark E. Myers, M.D., although Rindahl refers to him both as Mark Myers and Mike Myers.  See id.; Doc. 1-1 at 31, 42.  This order will refer to the defendant as Dr. Myers.

32. Thus, this Court construes Rindahl's complaint as bringing deliberate indifference to serious medical needs claims against these defendants in their individual capacities and in their official capacities for injunctive relief. Rindahl's Eighth Amendment deliberate indifference to serious medical needs claims against Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, Dr. Myers, Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr. Woodward, Dr. Lockwood, unknown Medical Personnel, Dr. Mullin, Dr. Regier, Ponto, Dr. Carpenter, Benting, Cook, Madsen, and Sullivan in their individual capacities and in their official capacities for injunctive relief and against Young, Dreiske, and Clark in their individual capacities survive § 1915A screening.

Construing his complaint liberally, Rindahl brings state-law claims for medical malpractice and breach of contract. See id. at 67-75. Because Rindahl's state-law medical malpractice and breach of contract claims are part of the same "case or controversy" as his Eight Amendment deliberate indifference to serious medical needs claims, this Court appears to have supplemental jurisdiction over these claims. See 28 U.S.C. § 1367(a).

Under South Dakota law, "in a suit for professional negligence, the plaintiff must establish duty, breach, and causation." Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 159 (S.D. 2018) (citing Hamilton v. Sommers, 855 N.W.2d 855, 861 (S.D. 2014)). Rindahl alleges that the various medical provider defendants owed him a duty of care, that they breached that duty of care, and that the breach caused him ongoing injury. See Doc. 1 at 13-32. Thus, his state-law medical malpractice claims against Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, Dr. Myers, Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr. Woodward, Dr. Lockwood, Dr. Mullin, unknown Medical Personnel, Dr. Regier, and Dr. Carpenter survive § 1915A screening.

Rindahl brings state-law breach of contract claims against the third-party medical provider defendants. See Doc. 1 at 67-75. These defendants have contracted with the SD DOC to provide medical care to inmates. See, e.g., id. at 67. But Rindahl does not allege that he is a party to these contracts, only that he is a third-party beneficiary who receives medical care under these contracts. See id. at 67-75. "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." SDCL § 53-2-6. But "[t]he party claiming third-party beneficiary status must show 'that the contract was entered into by the parties directly and primarily for his benefit.' " Sisney v. South Dakota, 754 N.W.2d 639, 643 (S.D. 2008) (quoting Mercado v. Mitchel, 264 N.W.2d 532, 538 (Wis. 1978)). "[A]s a general rule, a private party who contracts with [a] public government entity does not open itself to liability at the hands of the public." Id. at 644 (citation omitted).

In Sisney, the Supreme Court of South Dakota found that a public contract between the State of South Dakota and a third-party food provider for food services at SD DOC facilities did not provide the inmate plaintiff a cause of action for breach of contract even though the plaintiff benefited from the contract by receiving meals. Id. at 644-45. The contract "was made for the express benefit of the State, and the collective benefit that inmates may have received was only incidental to that of the State." Id. at 644; see also Estes v. Hughes County, 2021 WL 2043070, at *6 (D.S.D. May 21, 2021) ("[A] third party's right to sue to enforce a government contract can only 'arise from the plain and clear language of the contract.' " (quoting Sisney, 754 N.W.2d at 643-44)). This Court finds Sisney applicable to Rindahl's medical breach of contract claims. Rindahl makes no claim that he is an express beneficiary in the contracts he seeks to enforce. See Doc. 1 at 67-75. Thus, under South Dakota law, he has no right to sue to enforce these contracts,

and his state-law medical breach of contract claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**e.**     **Disciplinary Charge and Transfer Claims**

Rindahl alleges that he was falsely accused of and found guilty of an L-44 charge for refusing housing. See id. at 33-52. He alleges that he was transferred to MDSP in order to moot a request for injunctive relief that was pending in another lawsuit at that time. Id. at 33. He further claims that his punishment for this charge, six-months' loss of phone privileges, commissary, and visitation, was disproportionate in violation of his constitutional rights. See id. at 34-35. Construing his complaint liberally, Rindahl brings claims against the SD DOC defendants for violation of his First Amendment right to free speech, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment due process rights. See id. at 75-85.

**(1)**     **First Amendment Free Speech Claim**

Rindahl claims that his disciplinary punishment violated his First Amendment free speech rights. See id. Again, prison restrictions on First Amendment rights are constitutional if "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Turner requires that defendants put forth a "legitimate government interest" furthered by the restriction in question. See Thongvanh, 17 F.3d at 259. Thus, this Court cannot say Rindahl's claim is wholly without merit. Rindahl alleges that Olson, Badure, Jones, Madsen, Dreiske, Ponto, Benting, Young, Yost, Schneider, Cook, Ellis, Reisch, Clark, Sullivan, and Rotert participated in the allegedly unconstitutional conduct. See Doc. 1 at 33-52, 79-80. This Court construes Rindahl as bringing this claim against these defendants. See id. Rindahl's First Amendment free speech claim regarding his disciplinary punishment against Olson, Badure, Jones, Madsen, Dreiske, Ponto,

37

Benting, Young, Yost, Schneider, Cook, Ellis, Reisch, Clark, Sullivan, and Rotert in their individual capacities survives § 1915A screening.

Rindahl acknowledges that Wasko has expunged his disciplinary charge conviction and ended his enhanced sanctions, rendering injunctive relief moot regarding those sanctions.  See Doc. 9 at 24.  Thus, his First Amendment free speech claim regarding his disciplinary punishment against defendants in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (2)    Eighth Amendment Claim

Rindahl claims that his disciplinary punishment violated his Eighth Amendment right to be free from cruel and unusual punishment.  See id. at 75-85.  "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' "  Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer, 511 U.S. at 832).  The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted).  The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]"  Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measures of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation.  Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834).  An Eighth Amendment challenge to conditions of confinement

requires examining the totality of the circumstances. <u>Villanueva v. George</u>, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. <u>See</u> <u>id.</u>; <u>see also</u> <u>Tyler v. Black</u>, 865 F.2d 181, 183 (8th Cir. 1989).

Here, Rindahl fails to state a claim for violation of his Eighth Amendment rights. He does not allege deprivations sufficiently serious to deprive him of the minimal civilized measures of life's necessities, nor does he allege a substantial risk of serious harm. <u>See</u> <u>Simmons</u>, 154 F.3d at 807 (citing <u>Farmer</u>, 511 U.S. at 834); Doc. 1 at 33-52. Rindahl alleges a lack of medical care, but this Court has construed those allegations as separate claims for deliberate indifference to serious medical needs above. Otherwise, Rindahl only alleges a denial of telephone access, electronic communications, commissary, and visitation. <u>See</u> Doc. 1 at 33-52. These claims do not allege a denial of basic human needs under <u>Helling</u>. <u>See</u> 509 U.S. at 32. Thus, Rindahl's Eighth Amendment claim for his disciplinary conditions is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (3)   Fourteenth Amendment Due Process Claim

Rindahl alleges that his disciplinary charge and punishment violated his Fourteenth Amendment due process rights. Doc. 1 at 75-85.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." <u>Smith v. McKinney</u>, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." <u>Id.</u> (quoting <u>Williams v. Norris</u>, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be answered if the inmate can establish a

constitutionally protected liberty interest. Id. (citing Wilkinson, 545 U.S. at 221). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Id. (quoting Wilkinson, 545 U.S. at 221). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485 (1995). But "inmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Smith, 954 F.3d at 1080 (alteration in original) (quoting Wilkinson, 545 U.S. at 223).

The Eighth Circuit has explained that there is no "established 'baseline from which to measure what is atypical and significant in any particular prison system[.]' " Id. at 1081 (quoting Wilkinson, 545 U.S. at 223). But the Eighth Circuit has "affirmatively held what does *not* constitute an atypical or significant deprivation." Id. For instance, "a demotion to segregation, even without cause, is not itself an atypical and significant hardship." Id. at 1082 (quoting Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)). An inmate "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." Id. (quoting Phillips, 320 F.3d at 847); see also Kennedy v. Blankenship, 100 F.3d 640, 642-43 (8th Cir. 1996) (collecting post-Sandin cases in which deprivations were upheld as not atypical and significant hardships).

Here, Rindahl alleges a denial of telephone access, electronic communications, commissary, and visitation. See Doc. 1 at 33-52. This Court believes that Rindahl's disciplinary conditions likely fit into the category of cases cited by the Eighth Circuit in Kennedy as deprivations that were not atypical and significant hardships. See 100 F.3d at 642-43. For example, the inmate in Kennedy was placed in punitive isolation, where he was housed in two- or

four-person cells and faced "restrictions on mail and telephone privileges . . . , visitation privileges . . , commissary privileges, and personal possessions[.]" Id. at 642 n.2. But this determination relies on a comparison of Rindahl's conditions post-discipline and the conditions of the SDSP and MDSP general populations, which requires facts not currently before the Court. See Smith, 954 F.3d at 1082 (citing Phillips, 320 F.3d at 847). Rindahl alleges that his disciplinary conditions were disproportionate and an atypical hardship compared with other inmates who committed similar infractions. See Doc. 1 at 85. Thus, this Court cannot say with certainty at this early phase of litigation that Rindahl's post-discipline conditions were not an atypical and significant hardship, and the Court will assume for purposes of initial screening that Rindahl had a liberty interest in avoiding his post-discipline conditions of confinement but makes no finding of fact on that point.

Rindahl also claims that SD DOC officials falsified evidence against him. Id. at 34-38. "[C]laims based on the falsity of the charges . . . , standing alone, do not state constitutional claims." Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); see also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) ("[T]he filing of a false disciplinary charge is not itself actionable under § 1983 . . . ." (citation omitted)). A prisoner can bring a claim if the necessary procedural protections are not provided or if the disciplinary charge is brought in retaliation for filing a grievance. See Sprouse, 870 F.2d at 452. The Eighth Circuit has explained that the process due for a prison disciplinary hearing in which a prisoner has a liberty interest is "advance notice of the violation, an opportunity to be heard, and a written statement of the evidence relied on and the reasons for the disciplinary action." See Holt v. Caspari, 961 F.2d 1370, 1372 (8th Cir. 1992) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). A disciplinary decision must also be supported by "some evidence." See id. (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)).

Rindahl specifically alleges that Badure altered a public record and that Jones made false statements. Doc. 1 at 34-38. But a false disciplinary charge alone does not state a claim for a procedural due process violation, even when an inmate is ultimately found guilty of and disciplined for the charge. See Sprouse, 870 F.2d at 451-52. Further, Rindahl makes no claim that he was not provided with advance notice, opportunity to be heard, and a written statement of the evidence and reasons for the disciplinary action. See Doc. 1 at 33-52. He also acknowledges that when faced with a transfer to MDSP, he informed Olson that he believed MDSP was noncompliant with his single-cell status, and his disputing his placement at MDSP satisfies the "some evidence" standard under Caspari. See 961 F.2d at 1372 (citing Hill, 472 U.S. at 455); Doc. 1 at 34. Rindahl claims that Wasko's letter informing him that his disciplinary charge had been expunged stated that "[i]nmates shall not be disciplined unfairly and shall be afforded all applicable rights regarding due process." Doc. 9 at 24. But this language alone does not identify a violation of those rights and only explains that those rights shall be afforded to all inmates facing discipline. See id.

Rindahl does allege that his disciplinary charge was brought in retaliation for filing a grievance. Doc. 1 at 38. But Rindahl provides no information about the prior grievance allegedly triggering the retaliation, and he makes no allegations of fact regarding this retaliation other than the conclusory statement that Benting, Jones, and Dreiske acted "within a conspiracy to defraud/and defrauded the plaintiff of his Constitutional Rights – within a Discriminative/and Retaliatory Act for prior grievance[.]" See id. These factual allegations are not enough "to raise a right to relief above the speculative level" as required by Twombly. See 550 U.S. at 555. Thus, because Rindahl fails to allege that his due process rights were violated by his disciplinary charge and transfer, even assuming that he had a protected liberty interest in avoiding his post-discipline

conditions, his Fourteenth Amendment disciplinary charge and transfer due process claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### f.   Double Celling Claim

Rindahl alleges that the SD DOC issued an Administrative Remedy Response in 2010 that mandated he be provided single cell status and that his subsequent placement in a double-occupied cell violated his constitutional rights. See Doc. 1 at 81. He further alleges that SDCL § 1-15-1.8[20] prohibits the SD DOC from changing his celling status. See id. Although Rindahl's complaint does not state the injunctive relief he seeks to redress these claims, see Doc. 1 at 75-85, he has filed two motions for injunctions in which he argues that the SD DOC is in violation of its own mandate to provide him with single cell status. Docs. 5, 6. Rindahl's pleadings can be read to seek an order that he be placed in a single cell. See Docs. 5, 6.

Rindahl alleges that defendants' actions have created a liberty interest in being single celled under the First, Eighth, and Fourteenth Amendments. See Doc. 1 at 82. He does not explain how the First Amendment is implicated by his double-cell status. See id. at 75-85. Construing his complaint liberally, Rindahl brings claims for violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. See id. To the extent that Rindahl brings a First Amendment claim regarding his cell occupancy, that claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (1)   Eighth Amendment Claim

---

[20] SDCL § 1-15-1.8 reads in full, "Unless inconsistent with other provisions of this chapter, all rules, regulations, and standards of the agencies [under SD DOC control] that are in effect on July 1, 1989, shall continue with full force and effect until they are specifically altered, amended, or revoked in the manner provided by law, unless the statutory authority for such rules is superseded by this chapter." SDSP and MDSP are agencies under DOC control. See SDCL § 1-15-1.4.

Rindahl appears to allege that his Eighth Amendment rights have been violated by his placement in a double-occupied cell. See id. at 75-86. Again, in order to bring an Eighth Amendment conditions of confinement claim, Rindahl must allege a sufficiently serious deprivation and deliberate indifference to the risk of harm posed by that deprivation. Simmons, 154 F.3d at 807 (citing Farmer, 511 U.S. at 834). The Court must examine the totality of the circumstances. Villanueva, 659 F.2d at 854.

The totality of the circumstances test applies to claims that double celling is an unconstitutional condition of confinement. See Cody v. Hillard, 830 F.2d 912, 914 (8th Cir. 1987) (en banc). 799 F.2d 447, 449 (8th Cir. 1986). Double-celling is unconstitutional when it " 'le[ads] to deprivations of essential food, medical care, or sanitation' or if it 'increase[s] violence among inmates or create[s] other conditions intolerable for prison confinement.' " Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). An inmate must also show "that the elimination of double-celling will alleviate these problems[.]" See id.

Here, Rindahl makes no allegations regarding his conditions of confinement other than that he is double-celled. See Doc. 1 at 75-85. Thus, under the totality of the circumstances test, he fails to state a claim for violation of his Eighth Amendment rights, and his Eighth Amendment double-celling claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (2)    Fourteenth Amendment Claims

Rindahl alleges that his Fourteenth Amendment due process rights have been violated because the SD DOC is mandated to provide him single cell status after issuing an Administrative Remedy Response granting him that status. See Doc. 1 at 81. Again, Rindahl must first establish that he has a life, liberty, or property interest protected by the Fourteenth Amendment's Due

Process Clause. <u>See</u> <u>Smith</u>, 954 F.3d at 1079 (citing <u>Wilkinson</u>, 545 U.S. at 221). Rindahl has a liberty interest in avoiding conditions of confinement if those conditions "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>See</u> <u>id.</u> at 1080 (alteration in original) (quoting <u>Wilkinson</u>, 545 U.S. at 223).

Here, Rindahl fails to establish that he has suffered an atypical or significant hardship sufficient to create a liberty interest protected by the Fourteenth Amendment's Due Process Clause. <u>See</u> <u>id.</u> (citing <u>Wilkinson</u>, 545 U.S. at 223); Doc. 1 at 75-85. The only deprivation that he alleges is that he was transferred to MDSP and placed in a two-person cell, a condition that he acknowledges is common at MDSP. <u>See</u> Doc. 1 at 33-34. Thus, he fails to allege an atypical or significant hardship.

Rindahl also claims that the SD DOC "mandate[d]" he be provided single-cell status in a 2010 Administrative Remedy Response. Doc. 1 at 81. He argues that SDCL § 1-15-1.8 prohibits MDSP and SDSP from altering this mandate. <u>See</u> <u>id.</u> But § 1-15-1.8 allows rules, regulations, and standards of MDSP and SDSP to be "altered, amended, or revoked in the manner provided by law" and does not wholly prohibit these institutions from making changes to their policies. <u>See</u> SDCL § 1-15-1.8. Further, § 1-15-1.8 only applies to rules, regulations, and standards that were in effect on July 1, 1989, and has no impact on a policy implemented by a 2010 Administrative Remedy Response.[21] <u>See</u> <u>id.</u> Thus, Rindahl's Fourteenth Amendment due process claims for double celling are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**g.     Spending Account Claim**

---

[21] Rindahl did not attach to any pleading a copy of the Administrative Remedy Response in question. <u>See</u> Doc. 1-1 at 1-45.

Rindahl alleges that Sullivan denied him access to the funds in his spending account and savings account by moving them into his frozen account without notice or due process. Id. at 49. Construing his complaint liberally, Rindahl brings a Fourteenth Amendment due process claim against Sullivan for depriving him of his property. See id. Under the Fourteenth Amendment, a "State [cannot] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. But even an intentional deprivation of property does not state a due process claim under the Fourteenth Amendment if there is an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984). SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. Thus, an adequate post-deprivation remedy exists, and Rindahl's Fourteenth Amendment due process claim against Sullivan for deprivation of property is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### h.      Failure to Investigate Claims

Rindahl alleges that certain defendants have failed to investigate his claims as required by the South Dakota State Constitution and the PREA. See id. at 86-89. Specifically, he alleges that Malsam-Rysdon, Adam, Noem, Barnett, and federal DOJ officials in South Dakota have failed to investigate his medical claims, that Noem and Barnett have failed to investigate his claims that the Wisconsin DOJ has falsified his criminal history, and that Noem, Barnett, and federal DOJ officials in South Dakota have failed to investigate his PREA claims and SD DOC officials' indifference towards those claims. See id.

Rindahl also appears to bring these claims against the State of South Dakota. See Doc. 7 at 2. The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. Will, 491 U.S. at 65-66. "Eleventh Amendment immunity extends to states and arms of the state . . . ." Thomas v. St.

Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1084 (8th Cir. 2006) (internal quotations omitted).

Thus, Rindahl's claims against the State of South Dakota are barred by the Eleventh Amendment

and dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

Although the Eighth Circuit has recognized a due process claim against "reckless or

intentional failure to investigate that shocks the conscience[,]" this right protects criminal

defendants. See Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009). A criminal defendant can

bring such a claim in the following circumstances: "(1) evidence that the state actor attempted to

coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence

suggesting the defendant's innocence, [or] (3) evidence of systematic pressure to implicate the

defendant in the face of contrary evidence." Id. Here, Rindahl merely claims that defendants have

failed to investigate his claims. Doc. 1 at 86-89. He does not allege that defendants recklessly or

intentionally failed to investigate criminal charges against him. See id. Thus, he fails to bring

claims for failure to investigate under Akins. See 588 F.3d at 1184.

Rindahl also seeks to bring failure to investigate claims under Article IV, § 3 of the South

Dakota State Constitution and under the PREA. See id. Article IV, § 3 reads in relevant part:

> The Governor shall be responsible for the faithful execution of the law. He *may*,
> by appropriate action or proceeding brought in the name of the state, enforce
> compliance with any constitutional or legislative mandate, or restrain violation of
> any constitutional or legislative power, duty or right by any officer, department or
> agency of the state or any of its civil divisions.

(emphasis added). This language does not mandate any action on the part of the Governor and

thus cannot be read to create a liberty interest. To the extent that Rindahl seeks to bring a claim

for lack of compliance with the PREA, this Court has noted in previous filings by Rindahl that

"[c]ourts have found that the PREA . . . does not create a private right of action enforceable by an

individual civil litigant." Rindahl v. Kaemingk, 2017 U.S. Dist. LEXIS 105964, at *2 (D.S.D.

July 10, 2017) (citation omitted).  Thus, he cannot bring these claims under the PREA or under §

1983.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a

statute provide no indication that Congress intends to create new individual rights, there is no basis

for a private suit, whether under § 1983 or under an implied right of action.").  Thus, Rindahl's

Fourteenth Amendment due process claims for failure to investigate are dismissed without

prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### i.      Takings Clause Claim

Rindahl alleges that the SD DOC's collection of $0.03 per minute out of GTL's inmate

phone call charges violates the Fifth Amendment's Takings Clause.  Id. at 89-91.  He asks this

Court to order the SD DOC and GTL to reduce phone call rates to $0.05 a minute and to refund

all money collected by the SD DOC under this arrangement with interest.  Id. at 90-91.

Under the Fifth Amendment, "private property [shall not] be taken for public use, without

just compensation."  U.S. Const. amend. V.  The Supreme Court has explained that "[a]s long as

an adequate provision for obtaining just compensation exists, there is no basis to enjoin the

government's action effecting a taking."  Knick v. Township of Scott, 139 S. Ct. 2162, 2176 (2019).

"[C]onsideration other than cash . . . may be counted in the determination of just compensation."

Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 151 (1974) (citing Bauman v. Ross, 167 U.S.

548, 584 (1897)).  "Such compensation means the full and perfect equivalent in money of the

property taken.  The owner is to be put in as good [a] position pecuniarily as he would have

occupied if his property had not been taken."  United States v. Winnebago Tribe of Neb., 542 F.2d

1002, 1006 (8th Cir. 1976) (quoting United States v. Miller, 317 U.S. 369, 373 (1943)).

Here, Rindahl alleges that the SD DOC's collection of $0.03 per minute from GTL's phone

call fees constitutes an unconstitutional taking.  Doc. 1 at 89-91.  He argues that the current rates

include service charges and cites a District of New Jersey case that he claims has outlawed all service charges. Id. at 90 (citing James v. Global Tel*Link Corp., 2018 U.S. Dist. LEXIS 131862 (D.N.J. Aug. 6, 2018)).   But Rindahl misunderstands James, in which the court merely acknowledged that the New Jersey legislature had recently outlawed per-call service charges in correctional facilities within the state. See James, 2018 U.S. Dist. LEXIS 131862, at *7.

Although this Court has ruled in both a previous case and above that GTL is not a state actor for § 1983 purposes, see Rindahl, 2020 WL 6728840, at *6, other courts have found GTL to be a state actor when considering inmates' Takings Clause claims. See, e.g., James, 2018 U.S. Dist. LEXIS 131862, at *27-30.  But these courts have ultimately concluded that fees charged by GTL are not unconstitutional takings because a taking "implies *legal* compulsion, not a lack of reasonably priced options, even for crucial service like [Inmate Calling Services]." See James v. Global Tel*Link Corp., 2020 WL 998858, at *3 (D.N.J. Mar. 2, 2020); see also Banks v. County of San Mateo, 2017 WL 3434113, at *13 (N.D. Cal. Aug. 10, 2017) ("[T]he 'mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment.' " (quoting Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (en banc) (omission in original)); Salazar v. City of L.A., 2016 U.S. Dist. LEXIS 190608, at *31-32 (C.D. Cal. Sept. 26, 2016) (noting that the very few courts that have addressed this issue have found that "commissions taken from prison phone rates [do not] amount to an unconstitutional taking"); Pritchett v. Global Tel Link Corp., 2021 WL 1811665, at *3 (D.N.J. May 6, 2021) ("A lack of reasonably priced services available to county inmates is not a 'taking' because there is no legal compulsion to pay the alleged excessive rate." (citing James, 2020 WL 998858, at *3)).

In Banks, the Northern District of California found that the County of San Mateo did not commit a taking when it contracted with GTL to provide phone services to inmates. Id. at *2, *13-14. This Court finds the analysis in Banks and similar cases persuasive and concludes that the SD DOC's contract with GTL is not a taking under the Fifth Amendment. Thus, Rindahl's Fifth Amendment Takings Clause claim against the SD DOC defendants is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

Construing his complaint liberally, Rindahl brings state-law claims for unjust enrichment against the SD DOC defendants regarding the SD DOC's contract with GTL. See Doc. 1 at 89-91. Again, this Court has supplemental jurisdiction over all other claims that "are so related to claims in the action . . . that they form part of the same case or controversy" as the civil action over which this Court has original jurisdiction. 28 U.S.C. § 1367(a). But the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Eighth Circuit has explained that "the doctrine of pendent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]" Curtis v. Sears, Roebuck & Co., 754 F.2d 781, 785 (8th Cir. 1985) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)). Because this Court has dismissed Rindahl's federal Takings Clause claim regarding phone call costs against the SD DOC defendants, it will not exercise supplemental jurisdiction over Rindahl's state-law unjust enrichment claim. See 28 U.S.C. § 1367(c)(3). Rindahl's state-law unjust enrichment claim against the SD DOC defendants is dismissed without prejudice to a state-court filing by Rindahl under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**j.    Conspiracy Claims**

Rindahl alleges that various defendants have conspired to deprive him of his rights. E.g., Doc. 1 at 33. Specifically, he alleges that his medical claims, his disciplinary charge and transfer

claims, his double celling claim, and his PREA failure to investigate claim stem from conspiracies by certain defendants to defraud him or otherwise deprive him of his rights. See id. at 33, 41, 67, 88.

To plead a civil conspiracy under § 1983, Rindahl must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360-61 (8th Cir. 2012) (quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997)). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). The plaintiff must allege "specific facts tending to show a meeting of the minds[.]" Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (internal quotation omitted).

Here, Rindahl makes many allegations of conspiracies regarding his medical care, his disciplinary charge and transfer, his being double celled, and the alleged failure to investigate his PREA claims in his complaint. See Doc. 1 at 33, 41, 67, 88. But as described above, he fails to show a deprivation of a constitutional right or privilege caused by his disciplinary charge and transfer, his placement in a double cell, and his allegations of failure to investigate as required under McKinley. See 519 F.3d at 814 (citing Askew, 191 F.3d at 957); Doc. 1 at 33, 41, 88. As to his medical care conspiracy claims, Rindahl fails to allege facts that show a meeting of the minds. See Murray, 595 F.3d at 870; Doc. 1 at 13-32, 67-75. He alleges that several defendants falsified his medical records, but he alleges no facts showing that these defendants worked in concert or otherwise agreed to do so, only that the falsifications occurred. See Doc. 1 at 13-32,

67-75. Thus, his conspiracy claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### k.   Grievance Process Claims

Rindahl makes several allegations that SD DOC defendants delayed the processing of his grievances in order to prevent him from exhausting his administrative remedies. E.g., id. at 39. Construing his complaint liberally, Rindahl alleges violations of his Fourteenth Amendment right to due process. See, e.g., id. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Here, Rindahl claims that SD DOC officials refused to process or delayed processing of his grievances in order to prevent him from exhausting his administrative remedies, but these claims fail under Buckley. See 997 F.2d at 495; see, e.g., Doc. 1 at 39.  To the extent that Rindahl claims that these refusals and delays violated his right to access the courts, these claims have been separately screened above.  Thus, Rindahl's Fourteenth Amendment due process claims for

grievance process issues are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

## IV.     Motion for Appointment of Counsel

Rindahl has filed a motion for appointment of counsel.  Doc. 3; <u>see also</u> Doc. 1 at 91 (requesting appointment of counsel).  "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." <u>Stevens v. Redwing</u>, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims.  <u>Id.</u>  At this time, Rindahl's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately.  This Court believes that Rindahl is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel, Doc. 3, is denied at this time.

## V.     Motions for Temporary Restraining Order and Permanent Injunction

Rindahl has filed two motions for a temporary restraining order and a permanent injunction.  Docs. 5, 6; <u>see also</u> Doc. 1 at 91 (asking this Court to "address [i]ssues of [i]junctions[.]").  Rindahl asks this Court to remove him from double-cell status.  Doc. 5 at 1; Doc. 6 at 1.  This Court has dismissed Rindahl's double-celling claims.  Thus, his motions for a temporary restraining order and a permanent injunction, Docs. 5, 6, are denied.

## VI.     Motion for Amended Complaint

Rindahl asks this Court for an order "affording an Amended Complaint upon obtaining [c]ounsel[.]" Doc. 1 at 91.  Amended complaints are governed by Federal Rule of Civil Procedure 15 and by Local Rule 15.1.  "[A]ny party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or

underlined so that they may be easily identified." D.S.D. Civ. LR. 15.1.  Rindahl can seek leave

to file an amended complaint if he complies with the requirements of Local Rule 15.1.  To the

extent that Rindahl's request is a present motion to amend his complaint, that motion, Doc. 1 at

91, is denied because it does not comply with Local Rule 15.1.

## VII.    Motion for Change of Venue

Rindahl asks this Court to issue an order changing venue to the District of Minnesota or

the District of Nebraska.  Doc. 1 at 91.  Rindahl claims that this transfer is necessary because

"JCP[22] has been filed against [the undersigned judge.]"  See id.  Under 28 U.S.C. § 1404(a) and

(b), this Court has the discretion to transfer a civil action when appropriate to do so.  Section

1404(a) allows a district court to "transfer any civil action to any other district or division where

it might have been brought or to any district or division to which all parties have consented."

Section 1404(b) allows the court to transfer a civil action from a division in which the case is

pending "to any other division in the same district."  Neither § 1404(a) nor § 1404(b) supports

granting Rindahl's motion for a change of venue.  Rindahl provides no explanation for why a

transfer is necessary, and nothing in his complaint suggests this action could have been brought in

Minnesota or Nebraska.  Rindahl's motion for change of venue, Doc. 1 at 91, is denied.

## VIII.   Order

Accordingly, it is

ORDERED that Rindahl's motion for recusal, Doc. 10, is denied.  It is further

---

[22] In his affidavit accompanying his motion for recusal, Rindahl explains that he has "filed with
the Judicial Council a Judicial Complaint pursuant to Rule 4(a)(2)(B)" and references "Rules for
Judicial – Conduct and Judicial Disability Proceedings."  Doc. 11 at 1-2.

ORDERED that Rindahl's claims for insufficient notice of telephone rates under 47 U.S.C. §§ 201, 203 and 47 C.F.R. §§ 64.2401, 64.6110 against GTL survive § 1915A screening. It is further

ORDERED that Rindahl's flat-rate billing claim against GTL under 47 C.F.R. § 64.6090 survives § 1915A screening. It is further

ORDERED that Rindahl's state-law breach of contract claim regarding the cash prize offered by a streaming media service game against GTL survives § 1915A screening. It is further

ORDERED that Rindahl's First Amendment free speech claim regarding SD DOC telephone policies against Sullivan and Wasko in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that Rindahl's First Amendment access to the courts claim regarding his Wisconsin and California lawsuits against Sullivan and Wasko in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that Rindahl's Eighth Amendment deliberate indifference to serious medical needs claims against Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, Dr. Myers, Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr. Woodward, Dr. Lockwood, unknown Medical Personnel, Dr. Mullin, Dr. Regier, Ponto, Dr. Carpenter, Benting, Cook, Madsen, and Sullivan in their individual capacities and in their official capacities for injunctive relief and against Young, Dreiske, and Clark in their individual capacities survive § 1915A screening. It is further

ORDERED that Rindahl's state-law medical malpractice claims against Avera Medical Group, Center for Diagnostic Imaging, Sioux Falls Specialty Hospital, Dr. Myers, Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr.

Woodward, Dr. Lockwood, Dr. Mullin, unknown Medical Personnel, Dr. Regier, and Dr. Carpenter survive § 1915A screening. It is further

ORDERED that Rindahl's First Amendment free speech claim regarding his disciplinary punishment against Olson, Badure, Jones, Madsen, Dreiske, Ponto, Benting, Young, Yost, Schneider, Cook, Ellis, Reisch, Clark, Sullivan, and Rotert in their individual capacities survives § 1915A screening. It is further

ORDERED that Rindahl's Fifth Amendment Takings Clause claim against the SD DOC defendants is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). It is further

ORDERED that all of Rindahl's remaining claims against all remaining defendants are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). It is further

ORDERED that Rindahl's motion for appointment of counsel, Doc. 3, is denied. It is further

ORDERED that Rindahl's motions for temporary restraining order and permanent injunction, Docs. 5, 6, are denied. It is further

ORDERED that Rindahl's motion for amended complaint, Doc. 1 at 91, is denied. It is further

ORDERED that Rindahl's motion for change of venue, Doc. 1 at 91, is denied. It is further

ORDERED that Rindahl's motion to correct defect within conclusion/remedies/injunctions – not meant to be amend/supplement, Doc. 7, is granted. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Form (Form USM-285) to Rindahl so that he may complete the form to cause the complaint to be served upon Defendants GTL, Sullivan, Wasko, Avera Medical Group, Center for

Diagnostic Imaging, Sioux Falls Specialty Hospital, Dr. Myers, Dr. Rau, Dr. Lenter, Dr. Brozik, Dr. Fritz, unknown Correctional Health Services Nursing Staff, Dr. Woodward, Dr. Lockwood, unknown Medical Personnel, Dr. Mullin, Dr. Regier, Ponto, Dr. Carpenter, Benting, Cook, Madsen, Dreiske, Clark, Olson, Badure, Jones, Young, Yost, Schneider, Ellis, Reisch, and Rotert. It is further

ORDERED that Rindahl shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, Rindahl's supplement containing additional allegations, Doc. 9, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Rindahl will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED December 20th, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE