UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL, | 4:22-CV-04073-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING AMG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MISCELLANEOUS RELATED MOTIONS |
| TIM REISCH, IN HIS INDIVIDUAL CAPACITY; DOUG CLARK, IN HIS INDIVIDUAL CAPACITY; DAN SULLIVAN, IN HIS INDIVIDUAL CAPACITY; TROY PONTO, DEPUTY WARDEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JOHN BENTING, ASSOC. WARDEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; C. ROTERT, EX-ASSOC. WARDEN / CCM, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; ELLIS, SECTION MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; T. SCHNEIDER, SECTION MANAGER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; M. JONES, DISCIPLINARY HEARING OFFICER, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; L. LENTER, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; B. RAU, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; D. FRITZ, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; S. WOODWARD, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; S. LOCKWOOD, RADIOLOGIST, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN MEDICAL PERSONNEL, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES; AVERA MEDICAL GROUP; GTEL/GLOBAL TEL LINK CORPORATION; CENTER FOR DIAGNOSTIC IMAGING; KELLIE WASKO, IN HER OFFICIAL | |

| CAPACITY; SAMUEL YOST, IN HIS INDIVIDUAL CAPACITY; TERESA BITTINGER, IN HER OFFICIAL CAPACITY.<br><br>Defendants. | |

Plaintiff Randy Lee Rindahl, an inmate at the South Dakota State Penitentiary (SDSP), filed this pro se lawsuit under 42 U.S.C. § 1983 and other federal statutes. Doc. 1. This Court screened Rindahl's complaint under 28 U.S.C. § 1915A, dismissing the complaint in part and directing service upon defendants in part. Doc. 12. Rindahl's Eighth Amendment deliberate indifference to serious medical needs claims against Avera Medical Group (AMG), Dr. Leslie Lenter, Dr. Daniel Fritz, Dr. Suzanne Woodward, Dr. Scott Lockwood, and Dr. Brian Rau survived § 1915A screening. Id. at 55. Rindahl's state-law medical practice claims against these defendants also survived § 1915A screening. Id. at 55–56. AMG, Dr. Lenter, Dr. Fritz, Dr. Woodward, Dr. Lockwood, and Dr. Rau (collectively "AMG Defendants") filed an answer to Rindahl's complaint, Doc. 105, and Rindahl filed a motion seeking judgment on the pleading against the AMG Defendants, Doc. 127. The AMG Defendants oppose Rindahl's motion for judgment on the pleadings, Doc. 135, and move for summary judgment, Doc. 133. Rindahl opposes the AMG Defendants' motion for summary judgment. Doc. 158. This Court now considers Rindahl's motion for judgment on the pleadings, the AMG Defendants' motion for summary judgment, and the parties' related motions.

## I. Factual Background

### A. Epidural Injection

On July 25, 2011, at the request of a Rindahl's treating physician, Rindahl received a cervical epidural injection (injection) at the C6-7 level of his spine to attempt to address neck pain

that radiated into both arms.[1]  Doc. 134 ¶ 2; Doc. 137 ¶ 4.  The injection was performed by Dr.

Scott Lockwood, who has advanced subspecialty training in pain management from the Mayo

Graduate School of Medicine and has been a board-certified anesthesiologist for thirty years.  Doc.

134 ¶ 1; Doc. 137 ¶ 2.

Prior to performing the injection, Dr. Lockwood reviewed imaging and Rindahl's medical

records to determine the location that he thought would provide the most relief.  Doc. 137 ¶ 4.  Dr.

Lockwood determined that Rindahl's symptoms related to issues at the C5-6 and C6-7 level of his

spine, with the issues at C5-6 appearing more pronounced.  Id.; Doc. 137-1 at 1.  Dr. Lockwood

used the loss-of-resistance technique with fluoroscopy guidance to inject 80 mg of Depo-Medrol

into the C6-7 epidural space.  Doc. 137 ¶ 5; Doc. 137-1 at 1.  Dr. Lockwood performed the injection

at the lower C6-7 level because it was a safer location and the medication, once injected, travels

up into the C5-6 level providing the intended benefit.  Doc. 137 ¶ 6.

Rindahl alleges that Dr. Lockwood caused breaking in a "Healthy Intervertebral Spacing"

because during the procedure Rindahl heard a loud snapping noise, went limp for several seconds,

and almost fell off the table.[2]  Doc. 1 at 31, 71.  However, no issues occurred with the injection,

---

[1] Rindahl did not respond to AMG Defendants' Statement of Undisputed Material Facts,
Doc. 134.  Thus, all material facts set forth in the Statement of Undisputed Material Facts are
deemed to be admitted.  D.S.D. Civ. LR 56.1.D; see also Fed. R. Civ. P. 56(e)(2) (providing that
the court can consider a fact undisputed when a party "fails to properly address another party's
assertion of fact as required by Rule 56(c)"); Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062,
1067 (8th Cir. 2017) (holding that a litigant's pro se status does not excuse him from following the
district court's local rules); Johnson v. Kaemingk, 4:17-CV-04043-LLP, 2020 WL 1441713, at *1
(D.S.D. Mar. 23, 2020) (deeming facts admitted where a pro se plaintiff filed an opposition to a
motion for summary judgment but did not comply with D.S.D. Civ. LR 56.1.B); Joe v. Walgreens
Co/ILL, 4:09-CV-04144-RAL, 2010 WL 2595270, at *1 (D.S.D. June 23, 2010) (deeming facts
admitted where a pro se nonmoving party did not submit a statement of material facts or directly
respond to the moving party's statement of material facts).
    [2] Rindahl's complaint and response were not signed under penalty of perjury.  See Docs.
1, 158.  Thus, the allegations in his complaint and response are insufficient to defeat a motion for
summary judgment.  See Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); Henthorn v.

and Rindahl tolerated it well.  Doc. 134 ¶ 3; Doc. 137 ¶ 5; Doc. 137-1 at 1.  Dr. Lockwood saw

nothing in Rindahl's subsequent imaging that indicated any injuries from the injection.  Doc. 134

¶ 8.  Dr. Lockwood opined that he made the epidural injection in the "correct and intended space"

and a "'healthy intervertebral space' was not broken during the injection."  Doc. 134 ¶¶ 7–8; see

also Doc. 137 ¶ 8.

        Rindahl also alleges that a female staff member working for Dr. Lockwood informed

Rindahl that he had scar tissue in his left lung that was dislodged during the injection, but a male

staff member informed him that was his nose being imaged due to his chin being bent into his

chest while imaging occurred.  Doc. 1 at 31–32.  Rindahl claims that Dr. Lockwood failed to

disclose the condition of his lung to the South Dakota Department of Corrections (DOC) and

falsified medical records to exclude an intentional breaking of a healthy intervertebral spacing,

which resulted in continued degrading condition.  Id.; Doc. 128 ¶¶ 58–59.  But "Dr. Lockwood

did not falsify any of Rindahl's medical records or withhold information from Rindahl related to

the injection or otherwise."  Doc. 134 ¶ 9 (citing Doc. 137 ¶ 9).

        **B.      Knee Injury**

        Dr. Daniel Fritz received his medical degree from the University of South Dakota in 2006

and has been board-certified in diagnostic radiology since 2011.  Doc. 134 ¶ 10; Doc. 138 ¶ 2.

Rindahl reported that he had chronic knee pain beginning in 2013 after he suffered a fall that he

---

Capitol Communs., Inc., 359 F.3d 1021, 1026 (8th Cir. 2004).  The Court has included Rindahl's
allegations to provide context for the undisputed facts supported by record evidence.  Rindahl
attached an Index of Documents-Papers & Images/Assessments as Obtained from the State of
South Dakota – Department of Corrections Correctional Health Services & GTEL/GTL that is
notarized, but the index only includes images and states that "All Images and Papers were obtained
from wither [sic] the State of South Dakota – Department of Corrections – or Correctional Health
Services – adjoin GTEL/Global Tel Link Corporation within various dates[.]"  See Doc. 1-1 at 3.
Rindahl's index does not present any facts that contradict the record evidence.  See generally id.

alleges occurred through correctional staff abuse. Doc. 138 ¶ 7; Doc. 158 at 11; see also Doc. 1 at
22–23, 71, 73. In November 2017, Dr. Fritz reviewed an x-ray of Rindahl's left knee and found
that the x-ray results were negative and that the x-ray did not reveal any "fracture, joint effusion,
dislocation or other osseous abnormality." Doc. 134 ¶ 11; Doc. 138 ¶ 7; Doc. 138-2. In November
2019, Dr. Fritz reviewed an x-ray on Rindahl's left knee, noted that there was some joint effusion
but no joint space narrowing, fracture, or other osseous abnormality revealed on the x-ray, and
concluded that the x-ray results were otherwise negative. Doc. 134 ¶ 12; Doc. 138 ¶ 8; Doc. 138-3.

In December 2021, Dr. Fritz reviewed an x-ray of both of Rindahl's knees and compared
the x-ray with the x-ray taken in November 2019. Doc. 134 ¶ 13; Doc. 138 ¶ 9. In his December
2021 review, Dr. Fritz noted that there was "no fracture, joint effusion, or dislocation" in Rindahl's
knees but did note that there was mild bilateral osteoarthritis, mild bilateral quadriceps attachment
enthesopathy, and mild patellofemoral osteoarthritis. Doc. 134 ¶ 14; Doc. 138 ¶ 9; Doc. 138-4.
Rindahl claims that the 2019 x-ray shows a rip extending from just below the knee that Dr. Fritz
missed. Doc. 1 at 70. Rindahl alleges that Dr. Fritz misrepresented the evidence and falsified
medical records to conceal correction staff abuse and assault. Id. at 70–71. Dr. Fritz opined that
he complied with the standard of care and did not misinterpret the x-rays. Doc. 138 ¶¶ 11, 13. Dr.
Fritz also "did not falsify any of Rindahl's medical records or withhold information from Rindahl."
Doc. 134 ¶ 18.

**C.      Rib/Liver**

In December 2019, Dr. Fritz reviewed an x-ray of Rindahl's chest and noted that the x-ray
showed no acute findings and that the heart and lungs appeared normal. Doc. 134 ¶ 25; Doc. 138
¶ 4; Doc. 138-1. But Dr. Fritz later amended the medical record to clarify a transcription error and

added that there was the appearance of shrapnel in the right abdomen.  Doc. 134 ¶ 26; Doc. 138 ¶ 4; Doc. 138-1.

Dr. Leslie Lenter, who has been board-certified in diagnostic radiology with special competence in nuclear radiology for over thirty-five years, reviewed an x-ray of Rindahl's chest in February 2020.  Doc. 134 ¶¶ 27–28; Doc. 140 ¶¶ 2, 4.  Dr. Lenter compared and correlated the imaging from February 2020 with the December 2019 exam.  Doc. 140 ¶ 4.  Dr. Lenter noted that, except for the shrapnel from a prior gunshot wound, there were no abnormalities, recent fractures, or deformities, and the right lung was clear.  Id.; Doc. 134 ¶ 28; Doc. 140-1.

Rindahl claims that Dr. Fritz and Dr. Lenter should have observed and diagnosed a rib fracture, a liver condition, and other medical conditions or that they falsified reports to conceal deliberate indifference or avoid the cost of treating the injury.  Doc. 1 at 26–27, 56, 68.  However, it is undisputed that Dr. Fritz and Dr. Lenter did not misinterpret the imaging and did not falsify medical records.  Doc. 134 ¶¶ 34–35; Doc. 138 ¶ 14; Doc. 140 ¶ 8.

### D.    Abdomen Injury

Dr. Suzanne Woodward received her medical degree from the University of Minnesota Medical School in 2005; she is fellowship-trained in musculoskeletal radiology and has been board-certified in diagnostic radiology since 2010.  Doc. 134 ¶ 19; Doc. 139 ¶ 2.  In August 2020, Dr. Woodward reviewed a computerized tomography (CT) scan of Rindahl's abdomen and compared the scan with prior CT imaging taken in August 2017.  Doc. 134 ¶ 20; Doc. 139 ¶ 4.  Dr. Woodward noted that her findings were generally unremarkable and noted, among other things, that Rindahl had some scarring in his lungs, an "old right 11th lateral rib fracture," and shrapnel in his upper abdomen, which Dr. Woodward noted to Rindahl's treating clinician as a potential palpable area of concern.  Doc. 134 ¶ 20; Doc. 139 ¶¶ 4–5; Doc. 139-1.

Rindahl alleges that Dr. Woodward should have observed shrapnel in his spine and alleges that she intentionally misdiagnosed him or withheld information from him because she did not diagnose liver swelling. Doc. 1 at 26, 56. But Dr. Woodward did not misinterpret the scans and did not falsify records to conceal an objectively serious medical need. Doc. 134 ¶ 24; Doc. 139 ¶ 7. Rindahl also claims that Dr. Woodward failed to refer him for further testing, Doc. 1 at 56–57, but Dr. Woodward's role was only to make recommendations for additional treatment or testing if she saw a need based on what was presented to her, not to make treatment decisions. Doc. 139 ¶ 5.

## E.     Cervical Spine

Dr. Brian Rau, who is fellowship-trained in musculoskeletal imaging and board-certified in radiology, reviewed a CT scan of Rindahl's cervical spine in August 2020. Doc. 134 ¶¶ 36–37; Doc. 141 ¶¶ 2, 4. Dr. Rau noted that the imaging revealed "degenerative disc disease with advance changes at C5-6 and C 6-7" and that there was "no acute fracture or compression deformity." Doc. 134 ¶ 37; Doc. 141 ¶ 4; Doc. 141-1. Dr. Ryan Gnesda,[3] a radiologist who completed fellowship training in Interventional Radiology, reviewed an x-ray of Rindahl's cervical spine in September 2021. Doc. 134 ¶¶ 38–39; Doc. 142 ¶¶ 1, 4. Dr. Gnesda compared the September 2021 imaging with the August 2020 exam. Doc. 142 ¶ 4. Dr. Gnesda noted that there were no fractures and that Rindahl's tissue appeared normal in thickness, but there were some degenerative disc changes that caused reduced height between discs, especially at C5-6. Id.; Doc. 134 ¶ 39; Doc. 142-1. Ultimately, Dr. Gnesda concluded that there was no definite acute abnormality in the cervical spine and recommended a CT if there was continued concern. Doc. 134 ¶ 40; Doc. 142 ¶ 4; Doc. 142-1.

---

[3] Dr. Gnesda is not named as a defendant, but Rindahl alleged that Dr. Gnesda's interpretation of an x-ray in September 2021 was done negligently, that he intentionally or fraudulently misinterpreted it and then falsified medical records, and that he was deliberately indifferent. Doc. 1 at 17–18, 67–68; Doc. 142 ¶ 1.

Rindahl alleges that Dr. Rau and Dr. Gnesda should have observed or intentionally ignored a fracture in his cervical spine and that they falsified medical data to conceal correctional personnel assault and to avoid the cost of treatment. Doc. 1 at 16, 67–68. But Dr. Rau and Dr. Gnesda did not conceal medical conditions, misinterpret imaging, or falsify Rindahl's medical records. Doc. 134 ¶¶ 46–47; Doc. 141 ¶ 7; Doc. 142 ¶ 7.

## II.    Legal Analysis

### A.    Rindahl's Motion for Judgment on the Pleadings (Doc. 127)

Rindahl moves for judgment on the pleadings as to AMG Defendants, Doc. 127, and filed a brief in support, Doc. 128. AMG Defendants oppose Rindahl's motion. Doc. 135 at 3–4.

#### 1.    Legal Standard

When reviewing a motion for judgment on the pleadings under Rule 12(c), a court applies the same standard as that on a motion to dismiss under Rule 12(b)(6). Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." Ashley Cnty. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). A party may only move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c); Bear v. Cnty. of Jackson, 5:14-CV-5059-KES, 2015 WL 1969760, at *3 n.4 (D.S.D. May 1, 2015). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." Hesford v. Jefferson Capital Sys., 2019 WL 124823, at *1 (N.D. Iowa Jan. 7, 2019) (citation omitted); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2018).

When ruling on a motion for judgment on the pleadings, courts take the factual allegations pled by the nonmoving party as true and construe all inferences in the nonmoving party's favor

but need not accept the nonmoving party's legal conclusions.  Off. Comm. of Unsecured Creditors

v. Archdiocese of St. Paul & Minneapolis (In re Archdiocese of St. Paul & Minneapolis), 888 F.3d

944, 950 (8th Cir. 2018); Schunk Mkts., Inc. v. First Data Merch. Servs. Corp., 852 F.3d 732, 739

(8th Cir. 2017).

> A judgment for the plaintiff on the pleadings cannot be sustained if the answer sets
> up a valid defence[,] . . . nor can judgment on the pleadings be entered for a plaintiff
> where the defendants deny all allegations of wrongdoing and liability, and assert
> affirmative defenses.  Allegations of a complaint that are specifically denied by the
> answer must be eliminated from consideration in determining a plaintiff's motion
> for judgment on the pleadings.

61A Am Jur 2d Pleading § 497 (2024) (footnotes omitted).

### 2. Discussion

In this case, it appears that Rindahl's motion for judgment on the pleadings is more

accurately characterized as a motion for summary judgment. But the "undisputed facts" outlined

in Rindahl's motion simply repeat the allegations in his complaint, without citation to any record

evidence.  Further, in their answer, the AMG Defendants specifically deny the allegations in

Rindahl's complaint that are directed toward them. See Doc. 105 ¶¶ 7, 22, 36, 49, 50, 64, 79, 81,

82. On the basis of the parties' pleadings, the facts are disputed. Rindahl's brief in support of his

motion for judgment on the pleadings cites legal authorities that he believes "defeat" the AMG

Defendants' affirmative defenses. See Doc. 128 at 3–8. Nothing in the AMG Defendants' answer,

Doc. 105, or in Rindahl's motion for judgment on the pleadings justifies striking any of the

affirmative defenses.  Contrary to the assertions in Rindahl's motion for judgment on the

pleadings, there are numerous disputed facts, and Rindahl has not established that he is entitled to

a judgment as a matter of law on any of the claims alleged against the AMG Defendants or any of

the AMG Defendants' affirmative defenses. For these reasons, Rindahl's motion for judgment on

the pleadings, Doc. 127, is denied.

### B.   AMG Defendants' Motion for Summary Judgment

#### 1.   Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted).  There is a genuine issue of material fact if "a reasonable jury [could] return a verdict for either party" on a particular issue.   Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011).  A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).[4]

#### 2.   Qualified Immunity

AMG Defendants allege that they are entitled to qualified immunity.  Doc. 135 at 6 n.1. But the Eighth Circuit has held that private individuals and entities acting under color of state law are not necessarily entitled to qualified immunity as a defense to an action arising under § 1983. Davis v. Buchanan Cnty., 11 F.4th 604, 622 (8th Cir. 2021) (citing Domina v. Van Pelt, 235 F.3d

---

[4] AMG Defendants claim that Rindahl's response could be stricken as untimely because it did not contain a certificate of service confirming the date it was mailed. Doc. 161 at 6.  However, this Court need not determine if Rindahl's response could be stricken because, even considering Rindahl's response, AMG Defendants are entitled to summary judgment.

1091, 1096 (8th Cir. 2000)). For the purposes of this motion, AMG Defendants do not dispute that they acted under color of state law. Doc. 135 at 5.

In considering whether AMG Defendants are entitled to qualified immunity, this Court must apply factors established by the Supreme Court of the United States in Richardson v. McKnight, 521 U.S. 399 (1997) and Filarsky v. Delia, 566 U.S. 377 (2012). Davis, 11 F.4th at 617. The availability of qualified immunity depends on the historical availability of immunity and the weight of the policy reasons for affording protection from suit under § 1983. Id. at 617, 620.

AMG Defendants did not analyze these factors in their brief; they merely stated that they are distinguishable from the parties denied qualified immunity in Davis without further explanation. See Doc. 135 at 6 n.1. In Davis, the Eighth Circuit analyzed historical availability of immunity and the weight of the policy reasons for affording protection and held that "employees of large firms systematically organized to perform a major administrative task for profit, are not entitled to assert the defense of qualified immunity." Id. at 622 (internal quotation omitted). AMG Defendants have not presented any evidence or explanation of why they believe Davis is distinguishable. See Doc. 135 at 6 n.1. Thus, they have not established that they are entitled to assert qualified immunity as a defense.

AMG Defendants contend that even if they are not entitled to qualified immunity, they are entitled to summary judgment because Rindahl's claims fail on the merits. Id. This Court now considers the merits of Rindahl's claims against AMG Defendants.

### 3.   Deliberate Indifference Claims

#### a.   Deliberate Indifference Standard

To succeed on his deliberate indifference claim, Rindahl must show that (1) he suffered "an objectively serious medical need" and (2) that the "defendant actually knew of, but deliberately

disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

The second element of deliberate indifference requires a showing that the defendant "deliberately disregarded" the serious medical need, which is a greater burden than showing mere negligence. McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012) (citing Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)). To satisfy the second element, Rindahl must demonstrate that the defendant "recognized that a substantial risk of harm existed *and* knew that [his] conduct was inappropriate in light of that risk." Shipp v. Murphy, 9 F.4th 694, 703 (8th Cir. 2021) (quoting Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015)). Rindahl must show that the defendant's mental state was "akin to criminal recklessness." McCaster, 684 F.3d at 746 (internal quotation omitted). When evaluating whether a defendant displayed deliberate indifference to a plaintiff's serious medical needs, a court considers the defendant's "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position[,] and alternative courses of action that would have been apparent to an official in that position." Letterman, 789 F.3d at 862 (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)). Examples of "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Pietrafeso v. Lawrence Cnty., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)). "[M]ere disagreement with treatment decisions does not rise to

the level of a constitutional violation." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (quoting Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)).

When the alleged deliberate indifference relates to a "sophisticated medical question" that is "not within the common understanding of the jury or the court[,]" expert "'testimony is required to show proof of causation.'" Redmond v. Kosinski, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting Alberson v. Norris, 458 F.3d 762, 765–66 (8th Cir. 2006)). "[W]hen the injury is a sophisticated one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002). A plaintiff's "unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference." Redmond, 999 F.3d at 1121. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997).

### b.    Dr. Lockwood

Dr. Lockwood moves for summary judgment on Rindahl's Eighth Amendment claim against him alleging that Rindahl's claims are without merit and time barred. Doc. 135 at 9–12; Doc. 161 at 7–11. Rindahl opposes Dr. Lockwood's motion for summary judgment and argues that a genuine issue of material fact exists as to the condition of his spine before and after Dr. Lockwood performed the injection. Doc. 158 at 6.

Dr. Lockwood claims that Rindahl's Eighth Amendment claim against him is time barred. Doc. 135 at 12. It is undisputed that Dr. Lockwood performed an epidural injection on Rindahl in July 2011. Doc. 134 ¶ 2. Rindahl filed this lawsuit in June 2022. Doc. 1.

While § 1983 does not contain a specific statute of limitations, the Supreme Court of the United States has instructed courts to apply the most analogous state statute of limitations to claims made under § 1983. Wilson v. Garcia, 471 U.S. 261, 266–68 (1985). South Dakota has a specific statute of limitations governing civil rights actions and requiring such actions to be brought within three years after the alleged constitutional deprivation occurred. SDCL § 15-2-15.2; see also Bell v. Fowler, 99 F.3d 262, 266 (8th Cir. 1996). While the length of the limitations period is a matter of state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, the general rule is that "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (cleaned up). Because § 1983 borrows its statute of limitations from state law, state tolling rules apply to § 1983 claims. Forrester v. Clarenceville Sch. Dist. 537 F. Supp. 3d 944, 954 (E.D. Mich. 2021); see also Spradling v. Hastings, 912 F.3d 1114, 1120–21 (8th Cir. 2019) (applying Arkansas law to determine whether fraudulent concealment tolls the statute of limitations in a § 1983 action filed in the Eastern District of Arkansas). This Court held that SDCL § 15-2-15.2 is a statute of repose because the three-year period begins to run from occurrence of the alleged constitutional violation, Doc. 193 at 8; a statute of repose, as a matter of law, cannot be tolled for any reason, including fraudulent concealment. Pitt-Hart v. Sanford USD Med. Ctr., 878 N.W.2d 406, 413 (S.D. 2016).

Even if this Court were to construe SDCL § 15-2-15.2 as a statute of limitations, Rindahl's argument for tolling the statute of limitations fails. Rindahl argues that Dr. Lockwood falsified

14

medical records to exclude the intentional breaking of a healthy intervertebral spacing. Doc. 1 at 32; Doc. 128 ¶¶ 58–59. Liberally construed, he alleges that the statute of limitations should be tolled because of fraudulent concealment.[5] See Sisney v. Best, Inc., 754 N.W.2d 804, 809 (S.D. 2008) (stating that plaintiff's argument that the statute of limitations on a § 1983 claim was tolled by fraudulent concealment was "misplaced" because the plaintiff "did not seek relief based upon fraud in connection with his constitutional claims"). "Fraudulent concealment is an implied exception to the statute of limitations. When applicable, the exception tolls the statute of limitations until the cause of action is discovered or might have been discovered by the exercise of diligence." One Star v. Sisters of St. Francis, 752 N.W.2d 668, 681 (S.D. 2008). Rindahl's complaint alleges that during the procedure he heard the loud snapping noise, went limp, and almost fell off the table. Doc. 1 at 31. Thus, Rindahl's claim for deliberate indifference arises from the alleged injury to his spine, which Rindahl discovered or should have discovered when he felt and heard the alleged breaking of the spacing on July 25, 2011. See Doc. 158 at 4 ("Rindahl had identified the hearing of a Loud/Snapping Sound upon the placing of the needle within his . . . spine – to which upon redress of the personnel working for Lockwood – [Rindahl] had visually seen what looked like a Healthy Intervertebral Spacing broke within the height of the spacing . . ."). Thus, the statute of limitations would have expired in July 2014.

Rindahl also claims that the statute of limitations should be tolled under SDCL §§ 27A-1 and 15-2-22(2). Doc. 158 at 14. SDCL § 27A-1 applies to civil commitment and treatment of mental illness, but it does not provide tolling for the statute of limitations. SDCL § 15-2-22

---

[5] Although it also appears that Rindahl may be asserting a separate claim for fraudulent concealment, "[f]raudulent concealment is not a cause of action, but a mechanism to toll a statute of limitations." Rodriguez v. Siouxland Urology Assocs., 4:09-CV-04041-KES, 2013 WL 684243, at *5 (D.S.D. Feb. 22, 2013) (citation omitted).

provides that "the time of the person's disability is not a part of the time limited for the commencement of the action" for a person who is "Mentally ill." Rindahl claims that he has met the elements to toll under SDCL § 15-2-22(2) because he identified within his papers that he has a Special Needs Trust. See Doc. 158 at 14; see also Doc. 3-1. Rindahl's father arranging for any assets distributed to Rindahl to be held in a special needs trust does not establish that Rindahl has been diagnosed with a mental illness. Even so, the trust documents that Rindahl provided claim that the trust began in September 2015, which is after the three-year statute of limitations had already run. See Doc. 3-1 at 1. Further, SDCL § 15-2-22 permits tolling for a maximum of five years. Because Dr. Lockwood performed the injection in July 2011, with five years tolled and the three-year statute of limitations, the latest that he could have filed suit was July 2019. Therefore, Rindahl's Eighth Amendment claim against Dr. Lockwood is time barred.[6]

Even if the statute of limitations did not apply, Dr. Lockwood would still be entitled to summary judgment because Rindahl has not presented any record evidence showing that Dr. Lockwood was deliberately indifferent to an objectively serious medical need. After review of Rindahl's medical record relevant to the injection, Dr. Lockwood provided his professional opinion that Rindahl did not suffer an injury or serious medical condition from the injection. Doc. 137 ¶ 6–8. Dr. Lockwood further opined that he met or exceeded the standard of care. Id. ¶ 7. Rindahl has not presented any record evidence to the contrary or any evidence that Dr. Lockwood falsified Rindahl's medical records, and Rindahl's bare assertion is insufficient to overcome

---

[6] Rindahl also alleges that SDCL §§ 15-2-13 and 15-2-14.1 toll the statute of limitations, but he appears to allege that these statutes apply to his medical malpractice tort claims, not his Eighth Amendment claims. See Doc. 158 at 14 (claiming that SDCL § 15-2-13 applies to medical malpractice under contract because AMG Defendants contracted with the DOC and that SDCL § 15-2-14.1 applies the continuing tort doctrine to toll the deadline to file his tort claims); see also Doc. 161 at 11.

summary judgment. Thus, for these reasons, Dr. Lockwood is entitled to summary judgment on this claim.

### c.    Dr. Woodward

Dr. Woodward moves for summary judgment on Rindahl's Eighth Amendment claim against her arguing Rindahl's claim fails on the merits. Doc. 135 at 19–21; Doc. 161 at 21. Rindahl alleged that Dr. Woodward failed to diagnose shrapnel in his spine and misdiagnosed that there was shrapnel in his liver. Doc. 1 at 56. But the evidence of record shows otherwise.

It is undisputed that in August 2020, Dr. Woodward reviewed a CT scan of Rindahl's abdomen and determined that her findings were unremarkable but noting, among other things, scarring in Rindahl's lung, an "old 11th right lateral rib fracture," and shrapnel in his upper abdomen. Doc. 134 ¶ 20. Dr. Woodward did not observe an objectively serious medical condition with Rindahl's liver or kidney area, and she opines that her "review and interpretation of [Rindahl's] imaging was appropriate and [her] recommendations for future additional treatment or testing, or lack thereof, met or exceeded the medical standard of care applicable to a radiologist under these circumstances." Doc. 139 ¶¶ 5–6. Further, Dr. Woodward's role was to make recommendations for additional treatment or testing, not to make treatment decisions based upon the full clinical picture. Id. ¶ 5. It is also undisputed that Dr. Woodward did not falsify Rindahl's medical records to conceal any objectively serious medical condition. Doc. 134 ¶ 24.

Rindahl has not provided any record evidence showing a genuine dispute of material fact. Rindahl's opposition to Dr. Woodward's affidavit relies on his bare allegations. See Doc. 158. A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his pleading "but must set forth specific facts showing [the existence of] a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986)); see also Morslev v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). Rindahl did not submit any affidavits, discovery responses, or other record evidence to substantiate his allegations against Dr. Woodward. Rindahl's self-diagnosis is insufficient to defeat Dr. Woodward's motion for summary judgment. Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994). Thus, Dr. Woodward is entitled to summary judgment on Rindahl's Eighth Amendment deliberate indifference to serious medical needs claim against her.

### d.      Dr. Fritz and Dr. Lenter (Rib/Liver Claim)

Dr. Fritz and Dr. Lenter move for summary judgment on Rindahl's Eighth Amendment claims against them because Rindahl's claims rest entirely on self-diagnosis. Doc. 135 at 21–25. Rindahl claims that he suffered an injury to his rib cage on December 10, 2019, which he claims Dr. Fritz should have identified during his December 11, 2019 x-ray review. Doc. 1 at 26; Doc. 158 at 7. However, the original imaging was taken because of a productive cough, not a potential rib fracture at the 11th lateral right rib. Doc. 138 ¶ 5. Dr. Fritz reviewed an x-ray in 2019, compared the x-ray with an x-ray taken in 2017, and noted that Rindahl's heart and lungs appear normal; Dr. Fritz later amended the record to include that there was the appearance of shrapnel in the right abdomen. Id. ¶ 4; Doc. 138-1. Dr. Lenter reviewed an x-ray taken in February 2020, compared the x-ray with the 2019 x-ray, and noted that apart from the shrapnel, there were no abnormalities nor recent fractures, and the right lung was clear. Doc. 140 ¶ 4. Based on Dr. Woodward's August 2020 review, Rindahl claims that Dr. Fritz and Dr. Lenter should have observed an 11th lateral rib fracture and swelling in his liver. Doc. 1 at 26–27, 56; Doc. 128 at 23–28.

Rindahl attempts to use Dr. Woodward's affidavit, Doc. 139, as evidence to impeach Dr. Lenter and Dr. Fritz.[7]  Doc. 158 at 4–5, 8–10.  Dr. Woodward's affidavit noted an old right 11th rib fracture when reviewing a CT scan in 2020.  Id. at 8–10.  However, Dr. Woodward's affidavit does not create an issue of fact.  Dr. Woodward interpreted a different type of imaging that offered a higher level of detail compared to the imaging that Dr. Fritz reviewed in December 2019 and Dr. Lenter reviewed in February 2020.  Doc. 138 ¶ 6; Doc. 140 ¶ 6; Doc. 161 at 15; Doc. 162 ¶ 6.  Further, Dr. Woodward's review occurred after Dr. Fritz's and Dr. Lenter's reviews, and Rindahl has not presented any evidence showing when any possible rib fracture occurred, whether after Dr. Fritz's and Dr. Lenter's reviews or sometime shortly or long before.[8]

Dr. Fritz in preparing his affidavit reviewed the 2019 x-ray and opined that the x-ray did not show a fracture or other serious medical need.  Doc. 134 ¶¶ 30, 32.  Dr. Lenter reviewed the 2020 x-ray again before preparing his affidavit and opined that no rib fracture or other serious medical condition was present in the image.  Id. ¶¶ 31, 33.  Rindahl has not presented any record evidence, and specifically has not presented any record evidence from medical professionals, contradicting Dr. Fritz's and Dr. Lenter's affidavits.  It is also undisputed that Dr. Fritz and Dr. Lenter did not falsify Rindahl's medical records.  Id. ¶¶ 34–35.  Because there is no genuine issue of material fact, and Rindahl has not presented any record evidence showing that Dr. Fritz and Dr.

---

[7] Rindahl also attempts to use Dr. Woodward's affidavit, Doc. 139, as evidence to impeach Dr. Lockwood.  Doc. 158 at 4–6.  However, this Court need not address this because Rindahl's Eighth Amendment claim against Dr. Lockwood is time barred.  See supra at 13–17.

[8] Rindahl attempts to turn Dr. Woodward into an expert for him, but he has not contacted or compensated her as an expert, nor has Dr. Woodward agreed to act as an expert for him.  Doc. 162 ¶ 2.  Dr. Woodward also asserts that she does not have the expertise to opine on Dr. Lockwood's care and that she has no basis to question or challenge Dr. Fritz's or Dr. Lenter's interpretations, recommendations, or care toward Rindahl.  Id. ¶¶ 3, 6.

Lenter were deliberately indifferent to his lung and liver concerns, Dr. Fritz and Dr. Lenter are entitled to summary judgment on this claim.

### e.    Dr. Fritz (Knee Injury)

Dr. Fritz alleges that he is entitled to summary judgment on Rindahl's Eighth Amendment claims against him relating to Rindahl's knee injury because some claims are time barred and all claims fail on the merits.  Doc. 135 at 13–18.

Dr. Fritz moves for summary judgment on Rindahl's claims for deliberate indifference to his knee pain.  Doc. 1 at 70–71.  Rindahl claims that his 2019 x-ray shows a "rip extending from just below the knee" that Dr. Fritz missed.  Id. at 70; see also Doc. 158 at 12 (alleging that even a lay person could interpret the x-ray to identify an injury).  Rindahl also alleges that Dr. Fritz falsified medical records to conceal and cover up injuries to his knee by correctional staff.  Doc. 1 at 70–71.  Rindahl claims that both actions constitute deliberate indifference to serious medical needs.  Id.  However, Rindahl has not submitted any record evidence, by medical professionals or otherwise, showing that he had a rip extending just below the knee.  Dr. Fritz opined that he complied with the standard of care and that he properly interpreted Rindahl's x-rays.  Doc. 138 ¶¶ 7–9, 11, 13.  Rindahl's bare assertion and lay interpretation that the x-ray shows a tear in his knee is insufficient to defeat summary judgment.  See Kayser, 16 F.3d at 281.

Further, Rindahl's allegations that Dr. Fritz falsified medical records do not establish a claim for deliberate indifference.  Rindahl generally claims that Dr. Fritz used his position to "conceal/and or cover-up" injuries he allegedly sustained from correctional personnel and that Dr. Fritz misrepresented physical evidence, which is insufficient to allege a claim for deliberate indifference.  Doc. 1 at 70–71.  "Falsification of medical records, in and of itself, generally will not give rise to a § 1983 claim."  Martel for Est. of Martel v. Hillsborough Cnty., 2022 WL

11216469, at *5 n.43 (D.N.H. Oct. 19, 2022) (quoting <u>Smith v. Iverson</u>, 2019 WL 4417548, at *11 (D. Neb. Sept. 16, 2019) (cleaned up)). Even so, it is undisputed that Dr. Fritz denies falsifying Rindahl's medical records, Doc. 134 ¶ 18, and Rindahl has not presented any record evidence showing that Dr. Fritz actually did falsify medical records. Thus, Dr. Fritz is entitled to summary judgment on this claim.

Dr. Fritz asserts that the pleadings allege claims arising out of his 2019 and 2021 x-ray examination of Rindahl, not the 2017 x-ray examination. Doc. 135 at 14 n.4 (citing Doc. 1 at 70–71). This Court agrees. Rindahl's complaint does not appear to allege a deliberate indifference claim against Dr. Fritz for his 2017 x-ray examination. <u>See</u> Doc. 1 at 22–24, 70–71.

Even if Rindahl's complaint did allege a deliberate indifference claim against Dr. Fritz for the 2017 x-ray examination, Rindahl's claim would fail on the merits. Rindahl had not submitted any record evidence showing that Dr. Fritz acted with deliberate indifference when reviewing the 2017 x-ray.

### f.    Dr. Rau

Dr. Rau moves for summary judgment because Rindahl's Eighth Amendment claim relies entirely on self-diagnosis. <u>See</u> Doc. 135 at 26–28. Rindahl claims that Dr. Rau should have observed a fracture in his cervical spine and falsified medical data to conceal correctional personnel assault and to avoid the cost of treatment. Doc. 1 at 67–68; Doc. 158 at 13 (claiming that the x-ray shows an untreated identifiable injury to his cervical spine). But Rindahl has not provided any record evidence showing that he has a fracture in his cervical spine or that a fracture existed at the time that Dr. Rau examined his x-ray. Rindahl has provided no evidence showing a genuine issue of material fact and instead rests on his bare allegations, which are insufficient to

establish a genuine issue of material fact. See Gacek, 666 F.3d at 1145 (citing Anderson, 477 U.S. at 256).

It is undisputed that Dr. Rau reviewed a CT scan of Rindahl's spine in 2020 and noted that Rindahl had "degenerative disc disease with advanced changes at C5-6 and C6-7." Doc. 134 ¶ 37. Further, when Dr. Gnesda conducted an x-ray review of Rindahl's cervical spine in 2021, Dr. Gnesda did not identify a fracture in Rindahl's cervical spine.  Id. ¶ 39.  Rindahl has not put forward any record evidence by any medical professional or otherwise identifying that he has a fracture in his cervical spine or showing that Dr. Rau was deliberately indifferent for not identifying a fracture in his cervical spine.  Rindahl's allegations of deliberate indifference based on his own lay interpretation of a CT scan are insufficient to defeat summary judgment.  Thus, Dr. Rau is entitled to summary judgment on Rindahl's Eighth Amendment claim against him.

### g.    AMG

AMG seeks summary judgment on Rindahl's Eighth Amendment claim for deliberate indifference because "[t]here is no allegation that Avera Medical Group, as an entity, did anything to violate Rindahl's constitutional rights or that it acted independently in a negligent manner." Doc. 135 at 29.  A corporate entity is "liable under § 1983 only when the entity itself is a 'moving force' behind the violation.  That is, the entity's official 'policy or custom' must have 'caused' the constitutional violation[.]"  Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987).  Respondeat superior is not actionable under § 1983.  See Royster v. Nichols, 698 F.3d 681, 692 (8th Cir. 2012) (holding that § 1983 claim against a private security firm failed as a matter of law because "respondeat superior is inapplicable to claims under 42 U.S.C. § 1983") (citation omitted); Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (stating that "every circuit to consider the issue has

extended to private corporations as well the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis") (citation omitted).

Rindahl claims that AMG is liable because they contracted to provide medical services to inmates at the State of South Dakota and because of the actions of their employees. See Doc. 1 at 13–32, 52–53. Rindahl does not allege in his complaint, Doc. 1, nor in his response, Doc. 158, that AMG had an unconstitutional policy, custom, or action that caused a constitutional violation to him. Rindahl's claim against AMG rest on allegations of respondeat superior. Thus, AMG is entitled to summary judgment on Rindahl's Eighth Amendment deliberate indifference claim against it.

### 4.      State-Law Medical Malpractice Claims

To establish a claim for medical malpractice under South Dakota law, Rindahl must prove four elements: (1) a legal duty to act according to a recognized standard of care; (2) breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of the standard of care and the injury. Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 158 (S.D. 2018). The standard of care for medical professionals is usually "the common knowledge and comprehension of persons possessed of ordinary education, experience and opportunity." Id. South Dakota law requires expert testimony to prove a breach of the standard of care in providing medical treatment. Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986); Vearrier v. Karl, 4:06-CV-4188-KES, 2009 WL 2524581, at *4–5 (D.S.D. Aug. 14, 2009). South Dakota law also requires expert testimony to establish a causal connection between the alleged breach of the standard of care and the claimed injury. Koeniguer v. Eckrich, 422 N.W.2d 600, 602 (S.D. 1988); Lohr v. Watson, 2 N.W.2d 6, 8 (S.D. 1942).

a.     **Dr. Lockwood, Dr. Fritz (Rib/Liver), and Dr. Lenter**

Dr. Lockwood, Dr. Fritz, and Dr. Lenter claim that they are entitled to summary judgment on Rindahl's state-law medical malpractice claims against them because the claims are time-barred. Doc. 135 at 13, 26. South Dakota law provides that "[a]n action against a physician, surgeon, [ ] hospital, . . . or other practitioner of the healing arts for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred." SDCL § 15-2-14.1. In Pitt-Hart, 878 N.W.2d. at 412–13, the Supreme Court of South Dakota clarified that SDCL § 15-2-14.1 is a statute of repose rather than a statute of limitations. Accordingly, the two-year period begins to run "from the date of the last culpable act or omission of the defendant." Id. at 413 (citation omitted). The court also stated that unlike a statute of limitations, "a repose period is fixed and its expiration will not be delayed by estoppel or tolling." Id. ("Likewise, fraudulent concealment does not toll a period of repose."). Thus, with respect to Rindahl's state-law medical malpractice claims, it is not necessary to determine when the claims accrued. The Court need only consider when the alleged "malpractice, error, mistake, or failure to cure" occurred. Additionally, Rindahl's arguments that the statute of limitations should be tolled under SDCL §§ 21A-1 and 15-2-22 fail.

Rindahl claims that SDCL § 15-2-13 applies, which would extend the statute of limitation period to six-years, because the medical malpractice occurred while AMG Defendants were under contract with the DOC. See Doc. 158 at 14. However, SDCL § 15-2-13 states that it applies "[e]xcept where, in special cases, a different limitation is prescribed by statute." SDCL § 15-2-14.1 prescribes a two-year time limitation to bring a claim whether based on contract or tort for alleged medical "malpractice, error, mistake, or failure to cure." Thus, the period for

24

Rindahl to bring a medical malpractice claim is two years from the date that the alleged "malpractice, error, mistake, or failure to cure" occurred. SDCL § 15-2-14.1.

Rindahl also contends that the continuing tort doctrine prevents the statute of limitations from running. See Doc. 158 at 14. The continuing tort doctrine applies to the medical malpractice repose statute in SDCL § 15-2-14.1 "when harm is the cumulative effect of several treatments rather than the result of a single act." Robinson-Podoll v. Harmelink, Fox & Ravnsborg Law Off., 939 N.W.2d 32, 47 (S.D. 2020) (quoting Pitt-Hart, 878 N.W.2d at 415).

Here, it is undisputed that Dr. Lockwood performed an epidural injection on Rindahl in July 2011. Doc. 134 ¶ 2. There is no evidence that Dr. Lockwood provided further treatment that would toll the statute of limitations. Thus, Dr. Lockwood is entitled to summary judgment on this claim because it is time barred.

Dr. Fritz reviewed an x-ray image of Rindahl's chest in December 2019. Id. ¶ 25. Although Dr. Fritz reviewed an x-ray of Rindahl's knees in November 2019 and December 2021, id. ¶¶ 12–13, there is no evidence in the record that Dr. Fritz continued treatment of Rindahl's chest or that Rindahl and Dr. Fritz maintained an "on-going, continuous, developing and dependent relationship" that would toll the statute of limitations. Liffengren v. Bendt, 612 N.W.2d 629, 632 (S.D. 2000) (citing Beckel v. Gerber, 578 N.W.2d 574, 576 (S.D. 1998)). Thus, Dr. Fritz is entitled to summary judgment on Rindahl's state-law medical malpractice claim about his chest x-ray.

It is undisputed that in February 2020, Dr. Lenter reviewed an x-ray of Rindahl's chest. Doc. 134 ¶ 28. There is no evidence that Dr. Lenter continued further treatment for Rindahl.

Rindahl filed his suit in June 2022. Thus, Rindahl's state-law medical malpractice claims against Dr. Lenter are time barred.[9]

### b.    Dr. Woodward

It is undisputed that in August 2020, Dr. Woodward reviewed a CT scan of Rindahl's abdomen and noted that her findings were unremarkable and mentioned that Rindahl had some scarring in his lung, "an old 11th right lateral rib fracture," and shrapnel in his upper abdomen. Doc. 134 ¶ 20. Rindahl alleges that Dr. Woodward is liable for medical malpractice because she misdiagnosed or withheld information by failing to diagnose shrapnel in his spine and improperly failed to refer him for additional testing. Doc. 1 at 56–57; Doc. 128 at 29–31.

Dr. Woodward opines that she met and exceeded the standard of care when interpreting the CT scan of Rindahl's stomach and recommending additional treatment or testing, or lack thereof. Doc. 134 ¶ 23; Doc. 139 ¶ 6. Rindahl has not presented any record evidence to establish that Dr. Woodward breached the standard of care. Because Rindahl has not provided expert testimony to show that Dr. Woodward breached the standard of care, she is entitled to summary judgment on this claim. See Magbuhat, 382 N.W.2d at 46.

### c.    Dr. Fritz (Knee)

It is undisputed that Dr. Fritz reviewed an x-ray of both of Rindahl' knees in December 2021. Doc. 134 ¶ 15. Rindahl claims that Dr Fritz committed malpractice by failing to diagnose a tear in his knee. See Doc. 1 at 70–71; Doc. 128 at 23–24. However, Dr. Fritz states that "it is

---

[9] Rindahl claims that Dr. Woodward's affidavit creates genuine issues of material fact on his state-law medical malpractice claims against Dr. Lockwood, Dr. Fritz, and Dr. Lenter because Dr. Woodward identified an old right 11th lateral rib fracture that the former doctors did not. See Doc. 158 at 6, 12. However, Dr. Woodward's affidavit does not create a genuine issue of material fact because she was examining a different type of scan which provided more detail and she did not examine the same x-ray imaging that the former doctors viewed. Doc. 138 ¶ 6; Doc. 140 ¶ 6; Doc. 161 at 15; Doc. 162 ¶ 6.

[his] professional opinion that [his] review and interpretation of [Rindahl's] imaging met or exceeded the standard of care applicable to a radiologist under these circumstances." Doc. 138 ¶ 13; see also Doc. 134 ¶ 17. Rindahl has not presented any record evidence nor any expert testimony showing that he has a tear in his knee or that Dr. Fritz violated the standard of care by failing to diagnose Rindahl's alleged tear. Thus, Dr. Fritz is entitled to summary judgment on this claim.

Rindahl does not appear to allege a medical malpractice claim against Dr. Fritz for the 2017 x-ray examination. See Doc. 1 at 70–71. Even if he had, that claim would be barred by the statute of limitations, which requires that alleged claims of malpractice be brought within two years of the occurrence. See SDCL § 15-2-14.1. While Dr. Fritz reviewed x-rays of Rindahl's knees in 2017, 2019, and 2021, Rindahl has not shown that the treatments caused a harm that was a cumulative effect of several treatments, instead of three separate acts, to toll the time to file suit under the continuing tort doctrine. See Robinson-Podoll, 939 N.W.2d at 47 (citing Pitt-Hart, 878 N.W.2d at 415). Because Rindahl did not bring suit within two years for claims arising from the 2017 and 2019 review, these claims are time barred. Even if these claims were not time barred, Rindahl has not presented any record evidence or expert testimony showing that Dr. Fritz violated his standard of care. Thus, Dr. Fritz is entitled to summary judgment on this claim.

### d.   Dr. Rau

In August 2020, Dr. Rau reviewed a CT of Rindahl's cervical spine and concluded that the scan revealed "[d]egenerative disc disease with advanced changes at C5-6 and C6-7" but "no acute fracture or compression deformity." Doc. 134 ¶ 37; Doc. 141 ¶ 4; Doc. 141-1. Rindahl complains that Dr. Rau committed malpractice because he allegedly failed to diagnose a fracture in Rindahl's spine when reviewing the image. Doc. 1 at 67–68; Doc. 128 at 32–33. Dr. Rau opined that in his

professional opinion, his "review and interpretation of [Rindahl's] imaging was appropriate and [his] recommendations for future additional treatment or testing, or lack thereof, met or exceeded the medical standard of care applicable to a radiologist under these circumstances." Doc. 141 ¶ 6; see also Doc. 134 ¶ 44. Rindahl has not presented any expert testimony showing that Dr. Rau breached the standard of care. Rindahl also has not presented any record evidence showing that Dr. Rau falsified medical records. Thus, Dr. Rau is entitled to summary judgment.

### e.   AMG

Rindahl's complaint does not allege any independent acts of negligence by AMG. See Doc. 135 at 29. "[R]espondeat superior 'hold[s] an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.'" Hass v. Wentzlaff, 816 N.W.2d 96, 102–03 (S.D. 2012) (second alteration in original) (quoting Black's Law Dictionary 1426 (9th ed. 2009)). "The employer's liability is merely a derivative of the employee's." Cameron v. Osler, 930 N.W.2d 661, 663 (S.D. 2019) (citing Est. of Williams v. Vanderberg, 620 N.W.2d 187, 190 (S.D. 2000)). This Court determined that the employees of AMG that were named as defendants were not liable in negligence to Rindahl.[10] It necessarily follows that AMG, as the employer, cannot be vicariously liable in negligence to Rindahl. Thus, AMG is entitled to summary judgment on Rindahl's state-law medical malpractice claim.

---

[10] Although Dr. Gnesda is not named as a defendant, Rindahl has not shown that Dr. Gnesda committed wrongful acts that would expose AMG to liability under respondeat superior. See Doc. 142 ¶¶ 6–7 (Dr. Gnesda stated that "it is [his] professional opinion that [his] review and interpretation of [Rindahl's] imaging was appropriate [and that his recommendations] . . . met or exceeded the medical standard of care applicable to a radiologist under these circumstances. [He] den[ies] that [he] negligently, intentionally, or fraudulently misinterpreted the aforementioned imaging and den[ies] that [he] falsified medical records to conceal an objectively serious medical condition[.]"). Rindahl also discusses actions by Radiologist Dr. Matthew Pardy, who he claims is an employee of AMG but is not named as a defendant. Doc. 1 at 19. Rindahl has not shown or alleged that Dr. Pardy was negligent; thus, Rindahl has not alleged liability against AMG for Dr. Pardy's actions under respondeat superior. See id.

### C.  Rindahl's Motion to Order Discovery (Doc. 165) and Motion to Stay (Doc. 166)

Rindahl filed a Motion for Rule 26 Discovery to Impeach.  Doc. 165.  Rindahl does not allege under what section of Rule 26 he moves for discovery.  See id.  Rindahl's motion appears to be a general motion to compel discovery arising under Rule 37.  Rule 37(a)(1) requires that parties "include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery[,]" which Rindahl did not provide.  Fed. R. Civ. P. 37(a)(1).  Rindahl has not made a showing to justify an order to compel discovery.

Rindahl's Motion for Rule 26 Discovery to Impeach, Doc. 165, and his Motion to Stay Summary Judgment Pending Receipt of SD DOC Health Services Documents, Doc. 166, could liberally be construed as motions under Federal Rule of Civil Procedure 56(d).  Rule 56(d) provides that when a nonmovant shows by affidavit or declaration and for specified reasons that he is unable to present facts essential to justify opposition to a motion for summary judgment, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

Rindahl requests that the Court order the production of documents, papers, and images for example, nursing notations that directly relate to the image review by Dr. Regier.  Doc. 165 at 1. Rindahl claims that this discovery would provide evidence to impeach Dr. Fritz and Dr. Lenter because Dr. Regier had identified a "[f]racture priory [sic] concealed[.]"  Id. at 2.  Rindahl also wants a stay on this Court's decision on the summary judgment motion so that he can obtain evidence from DOC Health Services to impeach.  Doc. 166 at 1.  Although Rindahl claims that he needs the information to impeach and respond to AMG Defendants' motion for summary judgment, Rindahl has not complied with Rule 56(d)'s affidavit or declaration requirement.  "[A] Rule 56(d) declaration must comply with [28 U.S.C.] § 1746, including the requirements that the

affidavit or declaration (1) be sworn under penalty of perjury, and (2) declare that its contents are true and correct." Kuehne v. CitiMortgage, Inc., 2012 U.S. Dist. LEXIS 50781, at *14–15 (E.D. Mo. Apr. 11, 2012) (citing CareToLive v. Food & Drug Admin., 631 F.3d 336, 344–45 (6th Cir. 2011)). Rindahl has not submitted an affidavit or declaration under penalty of perjury, so he has not met the Rule 56(d) standard to forestall a decision on the summary judgment motion. Rindahl's Motion for Rule 26 Discovery to Impeach, Doc. 165, and his Motion to Stay Summary Judgment Pending Receipt of SD DOC Health Services Documents, Doc. 166, are denied.[11]

**D.      Motion for an Evidentiary Hearing (Doc. 174)**

Rindahl requests that the Court schedule an evidentiary hearing on AMG Defendants' motion for summary judgment "to obtain the proper documents to which is not within the plaintiffs [sic] control[.]" Doc. 174. AMG Defendants oppose Rindahl's motion for an evidentiary hearing. Doc. 178. Rindahl does not specify what documents he seeks.

Rule 56(d) does permit, in certain circumstances, a court to defer ruling on a motion for summary judgment if the non-moving party cannot present facts essential to justify its opposition. But Rindahl's motion falls short of Rule 56(d)'s requirements. Rindahl has not demonstrated "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to AMG Defendants' motion for summary judgment. Fed. R. Civ. P. 56(d). "It is not enough for a party to set forth some facts [he] hope[s] to elicit from further discovery." Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 836–37 (8th Cir. 2015) (second alteration in original) (citation omitted). In this case, Rindahl has not set forth any facts he hopes to elicit; he

---

[11] AMG Defendants also contend that Rindahl's Motion to Stay, Doc. 166, should be denied because it is untimely, waived, and lacks support for why he was unable to receive the requested documents. Doc. 172 at 4–9. This Court need not consider these grounds because his motion is procedurally deficient.

merely seeks to obtain unidentified "proper documents." "Rule 56(d) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct." Johnson v. Moody, 903 F.3d 766, 772 (8th Cir. 2018) (internal quotation omitted). Further, Rindahl has not complied with Rule 56(d)'s affidavit or declaration requirement. Thus, Rindahl's motion for evidentiary hearing, Doc. 174, is denied.

### E.      Rindahl's "Motion to Strick Remove Defense as Moot" (Doc. 185)

Rindahl moves to strike AMG Defendants' response to his motion for an evidentiary hearing. Doc. 185. Rindahl filed his motion for an evidentiary hearing on January 31, 2024. Doc. 174. AMG Defendants timely responded to his motion. See Doc. 176; D.S.D. Civ. LR 7.1.B (providing that an opposing party must file and serve a responsive brief on or before 21 calendar days after service of a motion). Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But a motion to strike will not be granted if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." Kuhlmeier v. Hazelwood Sch. Dist., 578 F. Supp. 1286, 1295 (E.D. Mo. 1984) (citation omitted). A motion to strike should not be granted "unless, as a matter of law, the defense cannot succeed under any circumstances, . . . or is immaterial in that it has no essential or important relationship to the claim for relief." FDIC. v. Coble, 720 F. Supp. 748, 750 (E.D. Mo. 1989) (citation omitted). Rindahl has not sufficiently shown that AMG Defendants' opposition to his motion for an evidentiary hearing should be stricken from the record because he has not shown that the defenses of AMG Defendants are insufficient or the responsive arguments of AMG Defendants contain any material that is redundant, immaterial, impertinent, or scandalous. See generally Doc. 185.

Further, Rindahl claims that AMG Defendants' alleged defense that his motion for an evidentiary hearing is incorrect because his motion "extends from the continued progression within a continued streaming of redress of AMG'S Summary Judgment (*Doc. 172*) – and his Motion To Stay Summary Judgment (*id*) *Doc. 133*[.]" Doc. 185 at 2. Regardless whether his motion was or was not timely filed, he is still not entitled to the evidentiary hearing he requested under Rule 56(d). Thus, Rindahl's motion to strike, Doc. 185, is denied.

### F.  Rindahl's Motion for an Order to Introduce as Evidence Under Expert Opinion Woodward, S. Affidavit (Doc. 152)

Rindahl requests that this Court enter an order to permit him to introduce Dr. Woodward's affidavit as evidence to impeach Dr. Fritz, Dr. Lenter, and Dr. Lockwood. Doc. 152 at 1. Dr. Woodward's affidavit is part of the record, Doc. 139, and this Court considered the affidavit when ruling on AMG Defendants' motion for summary judgment. See Fed. R. Civ. P. 56(c)(4) (permitting courts to consider on summary judgment affidavits that are made on personal knowledge, set out facts admissible in evidence, and show affiant is competent to testify on matters stated). Additionally, this Court already has determined that Dr. Woodward's affidavit does not create a genuine issue of material fact. See supra at 19. Thus, Rindahl's Motion for an Order to Introduce as Evidence Under Expert Opinion Woodward, S. Affidavit, Doc. 152, is denied as moot.

**G.**   **Plaintiff's 2nd Request to Supplement (Doc. 167) and Motion to Strike AMG Defendants' Objection to Motion to Stay and 2nd Supplemental Complaint (Doc. 179)**

Rindahl seeks leave to supplement his complaint to include allegations against additional defendants[12] arising out of incidents that have occurred since this Court issued its § 1915A screening order.  Doc. 167.  Federal Rule of Civil Procedure 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

Fed. R. Civ. P. 15(d).  Whether to grant leave to file a supplemental pleading is left to the sound discretion of the trial court, and such decision will not be disturbed on appeal absent an abuse of discretion.  Minn. Mining & Mfg. Co. v. Superior Insulating Tape Co., 284 F.2d 478, 481 (8th Cir. 1960).  Rindahl's Second Request to Supplement does not allege that the "new" claims involve the same transaction, occurrence, or series of transactions or occurrences or that there is a common question of law or fact as required to join multiple defendants in a single action.  See Fed. R. Civ. P. 20(a)(2).  This case has been pending for more than two years and includes multiple federal and state claims against multiple defendants.  Although Rindahl's complaint and his Second Request to Supplement both challenge his conditions of confinement, "related subject matter alone is insufficient to satisfy Rule 20.  If the claims do not arise from the same transaction or occurrence, plaintiffs must file each claim in a separate action and comply with the filing restrictions[.]"  Lundahl v. JP Morgan Chase Bank, 5:17-CV-05069-LLP, 2018 WL 6727071, at *3 (D.S.D. Dec. 21, 2018).

---

[12] One of the defendants identified in Rindahl's Second Request to Supplement, Deputy Warden Ponto, is also named as a defendant in Rindahl's initial complaint, but the allegations against Ponto in the initial complaint are substantially different than the failure to train allegations set forth in Rindahl's Second Request to Supplement.

Rindahl is a barred filer, and his present attempt to amend his complaint appears to be an attempt to avoid the filing fee and screening process. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the [PLRA] limits to 3 the number of frivolous suits or appeals that any prisoner may pay without prepayment of the required fees."); Bradford v. Ogbuehi, 2021 WL 2188130, at *4 (E.D. Cal. May 28, 2021) (denying prisoner's motion to supplement, finding "judicial economy will not be served by allowing supplementation here. Rather, these unrelated claims against new and different defendants belong in a different lawsuit."). For these reasons, Rindahl's Second Request to Supplement, Doc. 167, is denied.

Rindahl moves to strike the AMG Defendants' response to his motion to stay discovery and to his Second Request to Supplement as untimely. See Doc. 179 at 2. Rindahl's motion to stay discovery and Second Request to Supplement were docketed on January 9, 2024. See Doc. 166; Doc. 167. The Court notes that neither of Rindahl's motions includes a certificate of service, but the AMG Defendants were provided notice of the filing through the CM/ECF System on January 9, 2024. Their response to the motions, which was filed, served, and docketed on January 30, 2024, was timely. Doc. 172; see also D.S.D. Civ. LR 7.1.B (providing that an opposing party must file and serve a responsive brief on or before 21 calendar days after service of a motion). Rindahl's motion to strike, Doc. 179, is denied.

**H.      Rindahl's Motion to Join Parties (Doc. 182)**

Rindahl moves, pursuant to Federal Rule of Civil Procedure 19, to add three additional defendants to the "Defendant Sheet": Facility Warden/Associate Warden Johnsten, first name unknown; Administrative Grievance Coordinator Melissa Maturan; and West Hall Section

34

Manager Hettich, first name unknown.  Doc. 182.  Neither Rindahl's motion nor his supporting brief contains any analysis, argument, or discussion that would lead this Court to conclude that the three proposed additional parties are required parties under Rule 19(a)(1).  See Docs. 182, 183.  Simply put, Rindahl sets forth no facts or allegations that the "court cannot accord complete relief among existing parties" unless these three additional defendants are added.  Fed. R. Civ. P. 19(a)(1)(A).  Rindahl's motion to join parties under Rule 19, Doc. 182, is denied.

To the extent Rindahl's motion is construed as a motion for leave to file an amended complaint alleging claims against additional defendants, the motion is denied because Rindahl has not submitted a proposed amended complaint in conformity with D.S.D. LR. 15.1 setting forth his claims against the proposed additional defendants.  This Court has previously informed Rindahl that amended complaints are governed by Federal Rule of Civil Procedure 15 and Local Rule 15.1.  See Doc. 12 at 53–54; Doc. 190 at 3.  This Court specifically set out the requirement that "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified."  D.S.D. Civ. LR 15.1; see also Doc. 12 at 53–54; Doc. 190 at 3.  Yet, Rindahl has failed to comply with L.R. 15.1, and his motion, Doc. 182, is denied.  See, e.g., U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp., 690 F.3d 951, 958 (8th Cir. 2012) (holding that a district court does not abuse its discretion in denying leave to amend for failure to comply with local procedural rules).

## III.    Conclusion

For the reasons contained herein, it is

ORDERED that Rindahl's Motion for Judgment on the Pleadings against AMG, Doc. 127, is denied.  It is further

ORDERED that AMG Defendants' Motion for Summary Judgment, Doc. 133, is granted. It is further

ORDERED that Rindahl's Motion for Rule 26 Discovery to Impeach, Doc. 165, is denied. It is further

ORDERED that Rindahl's Motion to Stay Summary Judgment, Doc. 166, is denied. It is further

ORDERED that Rindahl's Motion for an Order to Introduce as Evidence Under Expert Opinion Woodward, S. Affidavit, Doc. 152, is denied as moot. It is further

ORDERED that Rindahl's Motion for an Evidentiary Hearing, Doc. 174, is denied. It is further

ORDERED that Rindahl's Motion to Strick Remove Defense as Moot, Doc. 185, is denied. It is further

ORDERED that Rindahl's Motion to Amend, Doc. 167, is denied. It is further

ORDERED that Rindahl's Motion to Strike AMG Defendants' Objection to Motion to Stay and 2nd Supplemental Complaint, Doc. 179, is denied. It is finally

ORDERED that Rindahl's Motion to Join Parties, Doc. 182, is denied.

DATED this 30ᵗʰ day of September, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE