UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL,<br><br>Plaintiff,<br><br>vs.<br><br>GTEL/GLOBAL TEL LINK CORPORATION,<br><br>Defendant. | 4:22-CV-04073-RAL<br><br><br>OPINION AND ORDER GRANTING<br>GLOBAL TEL LINK CORPORATION<br>D/B/A VIAPATH TECHNOLOGIES'<br>MOTION FOR SUMMARY JUDGMENT |

Plaintiff Randy Lee Rindahl, an inmate at the South Dakota State Penitentiary ("SDSP"), filed this pro se lawsuit asserting claims against Global Tel Link Corporation d/b/a ViaPath Technologies ("ViaPath") arising out of his use of a ViaPath-issued tablet at the SDSP.[1] Doc. 1; Doc. 9. Three of Rindahl's claims against ViaPath survived screening: (i) that ViaPath allegedly violated the Federal Communications Act ("FCA") by failing to disclose a change in telephone rates (a reduction in rates) in violation of 47 C.F.R. §§ 64.2401, 64.6110; (ii) that ViaPath allegedly violated the FCA by charging a flat-rate for calls as prohibited by 47 C.F.R.§ 64.6090; and (iii) that ViaPath allegedly breached a contract by failing to provide Rindahl a cash prize purportedly offered through a third-party gaming service's video game. Doc. 12 at 18–21. Now pending before this Court is ViaPath's motion for summary judgment. Doc. 287. Rindahl has also moved to invoke primary jurisdiction of the Federal Communication Commission ("FCC"). Doc. 285.

---

[1] Rindahl also asserted claims against current and former employees of the South Dakota Department of Corrections ("DOC") as well as outside medical providers who treated him while he has been in the custody of the DOC, but only the claims against ViaPath remain pending. See Docs. 193, 237, 239, 305.

I. **Factual Background**

ViaPath complied with Rule 56.1(A) of the District of South Dakota's Local Rules by filing a statement of material facts along with its motion for summary judgment. Doc. 290; D.S.D. Civ. LR 56.1(A). Rindahl responded to ViaPath's statement of material facts, but did not consistently include appropriate citations to the record as required by Federal Rule 56(c)(1)(A) and Local Rule 56.1(B). Doc. 293. Rindahl also submitted a brief opposing ViaPath's motion for summary judgment, Doc. 294, and two affidavits in response to ViaPath's motion for summary judgment, Docs. 295, 296. Rindahl's responsive filings seek to assert additional claims against ViaPath and rely on inadmissible evidence. Rindahl "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." Christians v. Young, 4:20-CV-04083-LLP, 2024 WL 5694328, at *12 (D.S.D. Sept. 30, 2024) (citing Bragg v. Husqvarna Forestry Prods., N.A. Inc., No. 4:20-cv-4054, 2021 WL 2346012, at *3 (W.D. Ark. June 8, 2021) (citing Hildreth v. City of Des Moines, 773 F. App'x 334, 335 (8th Cir. 2019) (per curiam)); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam)). "[W]hile . . . the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004). To the extent that Rindahl's responsive allegations and supporting documents relate to fraud and deceit in violation of South Dakota Administrative Rules, violations of SDCL § 49-31-12.2, violations of the First Amendment, his inability to be able to connect with specific phone numbers, complaints about how the South Dakota Department of Corrections ("DOC") responded to his kites and grievances, and other billing-related complaints,[2] Rindahl has not raised a genuine

---

[2] See Doc. 295 ¶¶ 3–13, 15–30, 32–69; Doc. 301 ¶¶ 3–13, 15–30, 32–69.

issue of material fact because there is no pending claim against ViaPath related to these allegations. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

Rindahl is an inmate at the South Dakota State Penitentiary ("SDSP"). Doc. 290 ¶ 1; Doc. 293 ¶ 1. On March 15, 2016, ViaPath entered into a Services Agreement with the State of South Dakota, acting through the DOC, to provide telecommunications services at the SDSP. Doc. 289 ¶ 2; Doc. 289-1; Doc. 290 ¶ 2; Doc. 293 ¶ 2. Pursuant to the Services Agreement, ViaPath provides tablets to inmates that inmates may use to make calls or send messages to family, friends, attorneys, and other approved individuals outside the SDSP. Doc. 290 ¶ 3; Doc. 293 ¶ 3. The Services Agreement specified the per-minute rates for various types of inmate calls. Doc. 289 ¶ 7; Doc. 290 ¶ 4; Doc. 293 ¶ 4. The Services Agreement specifically states that "[c]alls will be billed at the per minute rate and not by maximum length." Doc. 289-1 at 3; Doc. 290 ¶ 8. The March 15, 2016 Services Agreement provided for $0.05/minute for local calls, and $0.08/minute for both intrastate and interstate calls, regardless of whether the call was collect, prepaid, or charged to an inmate's account. Doc. 290 ¶ 5; Doc. 293 ¶ 5. The Services Agreement expressly states that the per minute rates are "exclusive of taxes, and other amounts [ViaPath] collects for, or pays to, third parties, including but not limited to payments in support of statutory or regulatory programs mandated by governmental or quasi-governmental authorities, such as the Federal Universal Service Fee, and any costs incurred by [ViaPath] in connection with such programs." Doc. 289-1 at 10; Doc. 290 ¶ 6. Federal fees and state taxes apply to individual calls, and the tax amounts vary based on the call's destination. Doc. 289 ¶ 11; Doc. 290 ¶ 7. Rindahl does not dispute the terms of the Services Agreement, but contends that there is a genuine issue of material fact because no fees or taxes may

be charged without approval from the Federal Communication Commission, the South Dakota Public Utilities Commission, or the State. Doc. 293 ¶¶ 6, 7. Even assuming Rindahl has correctly stated the law, he does not have a pending claim alleging that he was charged for unapproved fees or taxes. His claim is that he was billed a flat rate and not billed by the minute for telephone calls. As it relates to the pending claims, the terms of the Services Agreement are undisputed.

On or about September 1, 2020, ViaPath and the State of South Dakota executed an amendment to modify some terms of the Services Agreement. Doc. 290 ¶ 9; Doc. 293 ¶ 9. Per the September 2020 amendment, effective March 16, 2021, the per minute rate charged by ViaPath to inmates for intrastate and interstate calls was reduced from $0.08/minute to $0.06/minute. Doc. 290 ¶ 10; Doc. 293 ¶ 10. The September 2020 amendment did not alter the rate for local calls, which remained at $0.05/minute. Doc. 290 ¶ 11; Doc. 293 ¶ 11. The September 2020 amendment did not alter the terms in the Services Agreement stating that the per minute rates are exclusive of taxes and other amounts ViaPath collects for, or pays to, third parties "in support of statutory or regulatory programs mandated by governmental or quasi-governmental authorities, such as the Federal Universal Service Fee, and any costs incurred by [ViaPath] in connection such programs." Doc. 290 ¶ 12; Doc. 293 ¶ 12.

Since going into effect, the amended rates per minute have been posted on the DOC's website. Doc. 290 ¶ 13. Rindahl disputes this, but does not cite to any record evidence. Doc. 293 ¶ 13. It is undisputed that prisoners may request that prison staff provide them with the applicable per minute telephone rates. Doc. 290 ¶ 14; Doc. 293 ¶ 14. In response to ViaPath's motion for summary judgment, Rindahl provided a copy of a kite, dated March 2, 2022, requesting that prison staff provide him the rate for interstate calls along with the response of $0.06/minute. Doc. 296-2 at 14. Rindahl alleges that he made multiple requests for his telephone billing records, but the

DOC and/or ViaPath have not provided all the requested billing statements. Doc. 293 ¶ 13; Doc. 295 ¶¶ 21, 24. Again, however, Rindahl is attempting to expand his claims against ViaPath. Rindahl does not have a pending claim related to any alleged inability to obtain billing information, billing statements, or statements of account. See 47 C.F.R. § 64.6000 (defining "Billing Statement or Statement of Account").

The ViaPath tablets also provide inmates with access to certain third-party subscription gaming services. Doc. 289 ¶ 25; Doc. 290 ¶ 26.[3] ViaPath does not develop or own any of the subscription games accessible to inmates through the ViaPath tablets. Doc. 289 ¶ 26; Doc. 290 ¶ 27. ViaPath does not offer any prizes for playing third-party subscription games. Doc. 289 ¶ 29; Doc. 290 ¶ 28. ViaPath does not guarantee any prizes that may be offered by third-parties for playing third-party subscription games. Doc. 289 ¶ 29; Doc. 290 ¶ 29. "Brick Breaker Blitz" is a game owned and developed by a third party. Doc. 289 ¶ 27; Doc. 290 ¶ 30. Brick Breaker Blitz is a game that involves trying to break bricks by bouncing a ball off a platform at different angles, similar to "Pong," an Atari game. Doc. 289 ¶ 28; Doc. 290 ¶ 31.

All tablet games run offline, which means that once they are installed, they do not communicate with anything other than the tablet itself. Doc. 289 ¶ 30; Doc. 290 ¶ 32. Before each use of the tablet, inmates are required to accept the terms of ViaPath's End User License Agreement ("EULA") by the clicking an "ACCEPT" button. Doc. 289 ¶ 31; Doc. 290 ¶ 33.[4] The EULA states:

---

[3] Rindahl disputes many of ViaPath's statements of undisputed facts regarding his breach of contract claim, see Doc. 293, but as discussed infra at 10, 12, and 13 n.10, Rindahl has not cited any record evidence sufficient to raise a genuine issue of material fact.

[4] Rindahl did not respond to paragraph 33 of ViaPath's statement of undisputed material facts. Doc. 293 at 12. Thus, this paragraph is deemed admitted. D.S.D. Civ. LR 56.1(D) ("All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material

5

> GTL DOES NOT MAKE ANY REPRESENTATIONS ABOUT AND DISCLAIMS ALL WARRANTIES WITH RESPECT TO ANY THIRD-PARTY CONTENT, ANY NON-GTL DEVICE, OR THE ACTIONS OR OMISSIONS OF A SERVICE PROVIDER OR THIRD-PARTY CONTENT OWNER. GTL IS NOT RESPONSIBLE FOR EXAMINING OR EVALUATING THE CONTENT, ACCURACY, COMPLETENESS, TIMELINESS, VALIDITY, COPYRIGHT COMPLIANCE, LEGALITY, DECENCY, QUALITY OR ANY OTHER ASPECT OF THIRD PARTY CONTENT. GTL, ITS OFFICERS, AFFILIATES AND SUBSIDIARIES DO NOT WARRANT OR ENDORSE AND DO NOT ASSUME AND WILL NOT HAVE ANY LIABILITY OR RESPONSIBILITY TO YOU OR ANY OTHER PERSON FOR ANY THIRD PARTY CONTENT OR WEB SITES, OR FOR ANY OTHER MATERIALS, PRODUCTS, OR SERVICES OF THIRD PARTIES ACCESSED THROUGH THE GTL SERVICE. TO THE EXTENT YOU CHOOSE TO USE OR ACCESS ANY THIRD PARTY CONTENT THROUGH THE GTL SERVICE, YOU DO SO AT YOUR OWN INITIATIVE AND ARE RESPONSIBLE FOR COMPLIANCE WITH ANY APPLICABLE LAWS, INCLUDING BUT NOT LIMITED TO APPLICABLE LOCAL LAWS AND PRIVACY AND DATA COLLECTION LAWS.

Doc. 289 ¶ 33; Doc. 289-5 at 3; Doc. 290 ¶ 34. Rindahl does not dispute the content of the EULA, but he contends, without any explanation or argument, that the term "third party" is ambiguous. Doc. 293 ¶ 34. ViaPath provides additional terms of use for subscription gaming services. Doc. 289 ¶ 34; Doc. 290 ¶ 35; Doc. 293 ¶ 35. ViaPath's Fixed-Length Subscription Terms of Use ("Terms of Use") provides:

> 3. Content Availability. The availability of content supplied through the Subscription Services may change from time to time, based on various factors, including licensing and contract restriction requirements, territorial limitations, industry trends, content costs and availability. GTL reserves the right in its sole and absolute discretion to select, display and perform and/or limit content based [on] any of these factors, or others not listed herein, with or without notice to you. The quality of the display and sound may vary based on factors like your location, the availability of bandwidth, and speed of the network connection. In order to provide the Subscription Services, GTL must reserve the right to change, alter, modify or terminate any Subscription Services, content or application functionality at any time, with or without notice to you, including remove any content.

---

facts."); see also Fed. R. Civ. P. 56(e)(2) (providing that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"); Joe v. Walgreens Co/ILL, 4:09-CV-04144-RAL, 2010 WL 2595270, at *1 (D.S.D. June 23, 2010) (deeming facts admitted where a pro se non-moving party did not submit a statement of material facts or directly respond to the moving party's statement of material facts).

6

Doc. 289 ¶ 35; Doc. 289-6 at 2; Doc. 290 ¶ 36. In the EULA, GTL is defined as "Global Tel*Link Corporation, its subsidiaries and affiliates[.]" Doc. 289-5 at 2. In the Subscription Terms of Use, GTL is defined as "GTL Enhanced Services, LLC." Doc. 289-6 at 2. Neither the EULA nor the Terms of Use provide for any prize or other reward for participating in a third-party subscription game. Doc. 289 ¶ 36; Doc. 290 ¶ 37.

## II. ViaPath's Motion for Summary Judgment

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party[.]" True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if "a reasonable jury [could] return a verdict for either party[]" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011) (citation omitted). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

### B. Failure to Disclose a Change in Telephone Rates

Rindahl contends that ViaPath violated the FCA by failing to disclose a reduction in per minute calling rates as required by 47 C.F.R. §§ 64.2401, 64.6110. Specifically, he alleges that

ViaPath made "an undisclosed rate change from February thru [sic] March 2021[,]" reducing the rate from "0.11 a minute . . . to a Flat-Rate of $0.08 a minute[.]" Doc. 1 at 5. He also contends that ViaPath imposed rates that "extend outside the published rates as identified by SD DOC[.]" Id. at 4.

Sections 206 and 207 of the FCA provide for a cause of action for damages by any person harmed by a common carrier's violation of the FCA. 47 U.S.C. § 206 ("common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter[]"); 47 U.S.C. § 207 ("Any person claiming to be damaged by any common carrier . . . may bring suit for the recovery of the damages . . . in any district court of the United States of competent jurisdiction[.]"). Here, Rindahl alleges only that ViaPath failed to disclose a rate reduction and fails to allege or offer any evidence that the alleged failure to disclose a rate reduction harmed him.

To state a claim under Sections 206 and 207 of the FCA, Rindahl must allege and prove economic injury resulting from the alleged violation. Great Lakes Commc'n Corp. v. AT&T Corp., No. 13-CV-4117-DEO, 2015 WL 897976, at *4 (N.D. Iowa Mar. 3, 2015) (recognizing that a cause of action under 47 U.S.C. § 207 requires damages); Conboy v. AT&T Corp., 84 F. Supp. 2d 492, 499–500 (S.D.N.Y. 2000), aff'd, 241 F.3d 242 (2d. Cir. 2001) ("[A]lthough plaintiffs have alleged that AT&T has violated the [FCA], they have not demonstrated that they have suffered any damages. Therefore, plaintiffs have no private right of action[.]"); Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp., 892 F. Supp. 1520, 1545 (N.D. Ga. 1995) ("Damages are not presumed under the private right of action provided for in Section 206."); RCA Glob. Commc'ns, Inc. v. W. Union Te. Co., 521 F. Supp. 998, 1006 (S.D.N.Y. 1981) (dismissing FCA claim because plaintiff "failed to allege damage flowing from [the alleged violation]"). Because Rindahl alleges

only failure to disclose a rate *reduction* and provides no explanation how he was harmed economically, ViaPath is entitled to summary judgment on Rindahl's claim for failure to disclose a rate reduction.

But even if Rindahl had alleged actual damages[5] flowing from the claimed FCA violation, ViaPath would still be entitled to summary judgment on Rindahl's failure to disclose FCA claim because it is undisputed that ViaPath disclosed the rate change as required by 47 C.F.R. § 64.6110. This regulation requires that "[p]roviders must clearly, accurately, and conspicuously disclose their interstate, intrastate, and international rates and Ancillary Service Charges to consumers on their websites or in another reasonable manner readily available to consumers." 47 C.F.R. § 64.6110. After an amendment to the Services Agreement between ViaPath and the State of South Dakota reducing the per-minute rates effective March 16, 2021, it is undisputed that the new rates were available publicly on the DOC's website. Doc. 289 ¶ 16; Doc. 289-3 at 5–6; Doc. 290 ¶ 13. It is also undisputed that ViaPath's rates are also available to inmates upon request to the prison staff, and that Rindahl did, in fact, request and receive rate information by kiting prison staff. Doc. 289 ¶ 18; Doc. 290 ¶ 14; Doc. 296-2 at 14.

Finally, there is no record evidence to support Rindahl's allegation that ViaPath imposed rates "outside the published rates as identified by SD DOC." Doc. 1 at 4. A review of the record of all calls ViaPath billed to Rindahl from January 1, 2021, through April 18, 2025, reveals that

---

[5] In his complaint, Rindahl asserts that he is entitled to recover punitive damages on his FCA claims against ViaPath. Doc. 1 at 65. It is well established that punitive damages are not recoverable under the FCA. Cahnmann v. Sprint Corp., 133 F.3d 484, 491 (7th Cir. 1998); Fraser v. Mint Mobile, LLC, No. C 22-00138 WHA, 2022 WL 1240864, at *9 (N.D. Cal. Apr. 27, 2022) ("Federal Communications Act does not permit a punitive damages remedy."); Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co., No. 92 Civ. 1735 (LAP), 1998 WL 118174, at *31 (S.D.N.Y. Mar. 16, 1998) (holding that a plaintiff may not seek punitive damages under Section 206 of the FCA).

9

since March 16, 2021, when the amendment to the Services Agreement became effective, ViaPath has always billed Rindahl $0.05/minute for local calls and $0.06/minute for intrastate and interstate calls, plus tax. Doc. 289 ¶ 21; Doc. 289-4 at 2–6; Doc. 290 ¶ 17. Rindahl disputes that he has been billed at the rate set forth in the Services Agreement, amendment to the Services Agreement, and the publicly disclosed rates, but he relies on "graphs" that he submitted that reveal only call duration and total charges. See Doc. 293 ¶¶ 16,[6] 17, 20, 21; Doc. 294 at 5, 8, 9, 10; Doc. 296-2 at 1, 4–12. Because none of the graphs on which Rindahl relies identify a per minute rate, there is no genuine issue of material fact regarding the per minute rate charged for any specific call.

### C. Flat-rate Billing vs. Per-minute Billing

Rindahl contends that ViaPath violated the FCA by charging him a flat-rate for calls in violation of 47 C.F.R. § 64.6090. Doc. 1 at 65. As this Court has previously stated, "flat-rate billing" is defined as a "calling plan under which a Provider charges a single fee for an Inmate Calling Services call, regardless of the duration of the call[.]" Rindahl v. Malsam-Rysdon, No. 4:22-CV-04073-RAL, 2022 WL 17820909, at *9 (D.S.D. Dec. 20, 2022) (quoting 47 C.F.R. § 64.6000(h)). The Services Agreement specifically states that "[c]alls will be billed at the per minute rate and not by maximum length." Doc. 289-1 at 3; Doc. 290 ¶ 8.[7] It is undisputed that

---

[6] Graphs 1 and 2 are not attached to Rindahl's "Affidavit of Relevant Documentary Evidence." See Doc. 296. This Court assumes that "Graphs 1 and 2" are the graphs included in Rindahl's complaint, although they are not labeled as such. Doc. 1 at 3, 5.

[7] To refute the plain language of the Services Agreement, Rindahl cites a statement made by a DOC official when responding to one of his grievances. Doc. 296-1 at 20. According to the response, "[a]fter consulting with GTL staff it was determined that the phone prices are $0.06 per minute, with long distance calls being $0.09. Along with the flat rate it does charge for the additional seconds over the minute, so it may not be exactly those rates." Id. An out-of-court statement by a DOC official is hearsay when offered against ViaPath and insufficient to raise a genuine issue of material fact as to ViaPath. See, e.g., Shaw v. Wasko, No. 4:22-CV-4054-KES, Doc. 181 at 25 (D.S.D.) (excluding statement by DOC offered against GTL/ViaPath as hearsay) (citing United States v. Roe, 670 F.2d 956, 963 (11th Cir. 1982) (recognizing that when the prosecution offers a statement under Rule 801(d)(2)(A), the statement is only admissible against

ViaPath has never billed Rindahl a flat rate for calls. Doc. 289 ¶ 23: Doc. 290 ¶ 24. Rather, ViaPath has always billed Rindahl on a per minute basis and in accordance with the disclosed rates at the time of the call. Doc. 289 ¶¶ 22, 23; Doc. 290 ¶¶ 23, 24. Billing by the minute, as this Court has previously ruled, is not flat-rate billing, which is prohibited under 47 C.F.R. § 64.6090. Rindahl, 2022 WL 17820909, at *9.

In his pleadings, Rindahl contends that ViaPath charged him a flat-rate for two short phone calls on February 27, 2021, two short phone calls on September 1 and 5, 2021, a phone call on October 16, 2024, a phone call on November 3, 2024, and a phone call on December 5, 2024. Doc. 1 at 3, 5; Doc. 270-1 at 3. The record of all calls ViaPath billed to Rindahl from January 1, 2021, through April 18, 2025, reveals that on February 27, 2021, Rindahl made three short phone calls, each of which lasted less than one minute, and he was charged $0.08/minute, plus tax, for each call. Doc. 289-4 at 2; Doc. 290 ¶ 16. The charges for each call totaled $0.11. Doc. 289-4 at 2; Doc. 290 ¶ 16. The record of all calls ViaPath billed to Rindahl from January 1, 2021, through April 18, 2025, reveals that on September 1, 2021, Rindahl made a short phone call lasting less than one minute and was charged $0.06/minute, plus tax for the call, for a total of $0.08. Doc. 289-4 at 3; Doc. 290 ¶ 18. On September 5, 2021, Rindahl made another short phone call lasting less than one minute and was charged $0.06/minute, plus tax, for the call, for a total of $0.08. Doc. 289-4 at 3; Doc. 290 ¶ 19. On October 16, 2024, Rindahl was charged $0.06/minute, plus tax, for

---

the party who uttered it, not against any other co-defendants)). The billing records for the calls at issue clearly demonstrate that Rindahl was billed by the minute for his calls. Doc. 289 ¶ 21; Doc. 289-1 at 2–5; Doc. 289–4 at 2–6; Doc. 290 ¶¶ 15–22. Neither a DOC official's inadmissible hearsay nor Rindahl's graphs that contain only total charges for individual calls and do not include a per minute billing rate are sufficient to create a genuine issue of material fact. Finally, if, as Rindahl alleges, he was charged a flat rate for calls, his graphs would demonstrate that he was charged the same amount for every call, regardless of duration, but Rindahl has included graphs demonstrating that is not the case.

another call lasting less than one minute and the total charges were $0.07. Doc. 289-4 at 6; Doc. 290 ¶ 20. On November 3, 2024,[8] Rindahl was charged $0.06/minute, plus tax, for a call lasting less than one minute, and the total charges were $0.09. Doc. 289-4 at 6; Doc. 290 ¶ 21. On December 5, 2024,[9] Rindahl was charged $0.06/minute, plus tax, for a call lasting two minutes; the total charges were $0.17. Doc. 289-4 at 6; Doc. 290 ¶ 22.

Thus, it is undisputed that between March 15, 2016 and March 16, 2021, in accordance with the Services Agreement, ViaPath billed Rindahl $0.08/minute, plus tax, for both intrastate and interstate calls. Doc. 289-4 at 2; Doc. 290 ¶ 15. Since March 16, 2021, in accordance with the amendment to the Services Agreement, ViaPath has billed Rindahl $0.05/minute for local calls and $0.06/minute for both intrastate and interstate calls, plus tax. Doc. 289-1 at 2–6; Doc. 290 ¶ 17. Because there is no record evidence of any flat-rate billing, ViaPath is entitled to summary judgment on Rindahl's claim that ViaPath violated 47 C.F.R. § 64.9090.

### D. Failure to Provide a Prize

Rindahl alleges that ViaPath offers a subscription gaming service and this service offers cash prizes to be delivered to users. Doc. 9 at 4–5. Rindahl contends that he wrote to ViaPath to collect these prizes, but claims that ViaPath breached a contract by failing to provide him with a cash prize. Id. at 4–6. Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." Bowes Constr., Inc. v. S.D. Dep't of Transp., 793 N.W.2d 36, 43 (S.D. 2010) (citation omitted). A contract requires

---

[8] Rindahl alleges, but cites no record evidence, that he was charged $0.09 per minute for this call. Doc. 270-1 at 3.

[9] Rindahl alleges, but cites no record evidence, that he was charged $0.085 per minute for this call. Doc. 270-1 at 3.

"(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." SDCL § 53-1-2.

The record contains no admissible evidence of any contract between ViaPath and Rindahl obligating ViaPath to provide him prizes offered through any games, including "Brick Breaker Blitz," that he may have accessed via his ViaPath-issued tablet.[10] Neither the EULA nor the Subscription Terms of use provide for any prize or other reward for participating in a third-party subscription game. Doc. 289-5 at 3; Doc 289-6 at 2; Doc. 290 ¶¶ 34, 36, 37. ViaPath does not design, develop, or own any of the third-party subscription games available to prisoners through the ViaPath-issued tablet. Doc. 290 ¶ 27. Further, in the EULA, which prisoners must accept and acknowledge prior to each use of their ViaPath-issued tablet, ViaPath expressly disclaims liability or responsibility for any third party content or websites or any services of third parties accessed through the ViaPath-issued tablet. Doc. 289-5 at 3.

In his response to ViaPath's statement of undisputed facts, see Doc. 293 ¶¶ 26, 27, 30, 34, 36, and 37; Doc. 294 at 2–4, Rindahl argues that there is a genuine issue of material fact based on language contained in ViaPath's Fixed-Length Subscription Terms of Use. Doc. 289-5 at 3. But

---

[10] In his response to ViaPath's statement of facts, Rindahl alleges:

> ViaPath under GTL Enhances Services, LLC, have identified within said game under the condition of an expenditure of $0.05 a minute, GTL will pay the player upon the expiration of the **(60)** minute clock, a prize ranging from Electronic Games to Commissary, adjoining a **$100.00**. If the player decides not to the let the clock expire, he may be required to pay a delivery option up to **590 coins**. This game is not a Loot-Box, and has NO Level or player increase to diverse the monies identified back into the game.

Doc. 293 ¶ 28 (emphasis and highlight in original). But Rindahl does not cite to any record evidence, such as an affidavit, verified complaint, or any other competent evidence to support this allegation. Rindahl's bare allegations are insufficient to oppose a properly supported motion for summary judgment. See New York Life Ins. Co. v. Torrence, 592 F. Supp. 3d 836, 840 (D.S.D. 2022).

the Terms of Use do not provide for any prize or reward. Doc. 289-6 at 2. Rindahl contends that the fact that GTL Enhanced Services, LLC, which is not the entity that Rindahl sued, offers subscription services obligates ViaPath to assume liability for any prizes or awards that may be available on third-party content accessed using the subscription service. But Rindahl's contention is contrary to the plain language of the Terms of Use. Tri-City Assocs., L.P. v. Belmont, Inc., 845 N.W.2d 911, 915 (S.D. 2014) (stating that interpretation of a contract is a question of law). Moreover, Rindahl's argument cannot be reconciled with the language of the EULA specifically disclaiming responsibility by ViaPath for any third-party content of any third-party services accessed through the ViaPath tablet. Finally, Rindahl cited to record evidence that ViaPath offered a fourteen-day free trial subscription of Game Center Pro, which includes the game Brick Breaker Blitz, to promote this third-party subscription gaming service. See Doc. 296-2 at 100. As a matter of law, however, promoting Game Center Pro does not contractually obligate ViaPath to assume liability for any prizes or cash awards Game Center Pro may offer, or alter in any way the language of the EULA and Terms of Use expressly disclaiming any such liability. Because Rindahl has not established the breach of any enforceable promise by ViaPath, ViaPath is entitled to summary judgment on Rindahl's breach of contract claim.

### III.   Rindahl's Motion to Invoke Primary Jurisdiction

Rindahl moves to invoke primary jurisdiction of the Federal Communication Commission ("FCC"). Doc. 285. The United States Court of Appeals for the Eighth Circuit has described the primary jurisdiction doctrine as "a common-law doctrine that is utilized to coordinate judicial and administrative decision making." Access Telecomms. v. Sw. Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998). This doctrine applies to claims "that contain some issue within the special competence of an administrative agency[]" and allows a district court to refer cases containing such claims to

14

the appropriate administrative agency. Chlorine Inst., Inc. v. Soo Line R.R., 792 F.3d 903, 909 (8th Cir. 2015) (quoting Reiter v. Cooper, 507 U.S. 258, 268 (1993)). However, the purpose of the doctrine is not "to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit," but instead is to be employed "only if a claim requires resolution of an issue of first impression, or a particularly complicated issue that Congress has committed to a regulatory agency." 2 Am. Jur. 2d Admin. Law § 427 (2025). Indeed, the Eighth Circuit has held that it is "always reluctant . . . to invoke the doctrine because added expense and undue delay may result." Access Telecomms., 137 F.3d at 608; see also Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005) ("The doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" (citation omitted)).

While there is "no fixed formula for deciding whether to apply the doctrine of primary jurisdiction[,]" the Eighth Circuit has identified two primary reasons for invoking the doctrine. Sancom, Inc. v. AT&T Corp., 696 F. Supp. 2d 1030, 1035 (D.S.D. 2010) (citing Access Telecomms., 137 F.3d at 608). First, the doctrine is properly invoked "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." Alpharma, 411 F.3d at 938 (citing Access Telecomms., 137 F.3d at 608). Second, the doctrine may be invoked to "promote uniformity and consistency within the particular field of regulation." Access Telecomms., 137 F.3d at 608. Thus, when deciding if the doctrine should be invoked, courts focus on "whether the issues raised in a case 'have been placed within the special competence of an administrative body' and whether a case poses the possibility of inconsistent outcomes between courts and the agency on issues of regulatory policy." Sprint Spectrum L.P. v. AT&T Corp., 168 F. Supp. 2d 1095, 1098 (W.D. Mo. 2001) (quoting U.S. v. Western Pac. R. Co., 352 U.S. 59, 64 (1956)).

Here, neither the "reasons for the existence of the doctrine are present[,]" nor is this a situation where the purposes of the doctrine will be "aided by its application." Alpharma, 411 F.3d at 938. The issues here are not within "the special competence of an administrative body" and also do not "pose[] the possibility of inconsistent outcomes between courts and the agency on issues of regulatory policy." Sprint Spectrum, 168 F. Supp. 2d at 1098. Here, Rindahl's FCA claims are governed by FCC regulations that are within the conventional experience of district courts and do not require special guidance from an administrative agency. This Court notes that it previously addressed claims arising under FCC regulations in an earlier action brought by Rindahl. See Rindahl v. Noem, 4:20-CV-04044-RAL, 2020 WL 6728840, at *7 (D.S.D. Nov. 16, 2020) (discussing Rindahl's claims under 47 C.F.R. §§ 64.6090, 64.2401, and 64.6110). The Eighth Circuit's clear guidance to invoke the doctrine sparingly counsels against granting Rindahl's motion to invoke primary jurisdiction, Doc. 285.

## IV.    Conclusion

Accordingly, it is

ORDERED that ViaPath's motion for summary judgment, Doc. 287, is granted. It is further

ORDERED that Rindahl's motion to invoke primary jurisdiction, Doc. 285, is denied.

DATED this 30th day of September, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE